STATE of Wisconsin EX REL. Aman SINGH,
Petitioner-Appellant,†

v.

Paul KEMPER, Warden, Racine Correctional
Institution, Respondent-Respondent.††

Court of Appeals

*No. 2013AP1724. Submitted on briefs January 16, 2014.*
*—Decided March 26, 2014.*

2014 WI App 43

(Also reported in 846 N.W.2d 820.)

† Petition for Review Filed.
†† Petition for Cross Review filed.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Aman Singh*, pro se.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Sara Lynn Larson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J.   Aman Singh appeals pro se the circuit court's denial of his petition for a writ of habeas corpus. He argues that retroactive application of a law first enacted after he committed crimes relevant to this appeal violates the ex post facto clauses of the United States and Wisconsin constitutions by denying

him the opportunities for early release from prison which existed when he committed the offenses. He also argues that a change in the role of the sentencing court related to review of early release opportunities based upon "positive adjustment time" (PAT) violates the clauses. Lastly, he contends he should be eligible for PAT for his time served in the county jail. We agree that retroactive application of portions of the new law violates the ex post facto clauses, but we conclude Singh has not met his burden of showing that provisions in the new law adjusting the role of the sentencing court violate the clauses. We further hold that Singh is not entitled to PAT for his time in jail.

## BACKGROUND

¶ 2.  In 2010, Singh was convicted and sentenced for obtaining, in 2008, a controlled substance by fraud, a Class H felony. He was placed on three years' probation with a three-year bifurcated sentence imposed and stayed. In July 2011, he committed another violation of the same statutory provision, for which he was convicted in November 2011.[1] Singh's probation on his first offense was revoked on December 13, 2011, and two weeks later Singh was sentenced to a five-year bifurcated sentence on his second offense, to be served consecutively to his first-offense sentence. Singh's first day in prison was January 4, 2012; prior to that date, he had spent months in jail.

¶ 3.  In 2009, as part of its biennial budget, 2009 Wis. Act 28, the legislature enacted a statutory scheme that afforded prisoners various opportunities for early

---

[1] Singh was also convicted of additional offenses in November 2011, but he does not address them in this appeal, so neither do we, except to point out that those offenses were committed after August 3, 2011, the effective date of 2011 Wis. Act 38.

release, effective October 1, 2009. *See* 2009 Wis. Act 28, §§ 9411(2u), 2720–2733. Two years later, the legislature enacted 2011 Wis. Act 38, which repealed or modified the early release provisions established in the 2009 act, effective August 3, 2011, and created Wis. Stat. § 973.198 (2011–12),[2] which altered the procedures for procuring early release based upon PAT purportedly earned through August 3, 2011. *See* 2011 Wis. Act 38, §§ 36–47, 56–58, 96.

¶ 4. After his arrival in prison in January 2012, Singh sought early release pursuant to provisions of the 2009 act. The department of corrections (DOC) declined to process the request, determining that with the enactment of the 2011 act, Singh was not eligible for early release. Singh petitioned the circuit court for a writ of habeas corpus, which the court denied. He appeals. Additional facts are set forth as necessary.

## DISCUSSION

¶ 5. Singh contends he has passed his dates of eligibility for early release based upon the 2009 act and he should be considered for such release pursuant to Wis. Stat. §§ 302.113(2)(b) and (9h) and 304.06(1)(bg)1. and 3. (2009–10) of that act, which were in effect at the time he committed or was convicted and sentenced on his offenses. He argues that applying the provisions of the 2011 act to make him ineligible for early release violates the federal and state constitutions' ex post facto clauses because when he committed or was convicted and sentenced on his offenses, the early release provisions of the 2009 act were in effect. He also contends that applying to him newly created Wis. Stat. § 973.198,

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

which modifies the sentencing court's role in the early release review process, violates the clauses. Lastly, he claims he is entitled to PAT based upon days he spent in jail prior to his arrival in prison. Singh is correct in some respects, wrong in others.

*Eligibility for Early Release*

■

¶ 6. Singh's offenses are Class H felonies. Under the 2009 act, WIS. STAT. §§ 302.113(2)(b) and 304.06(1)(bg)1. (2009–10) generally afforded certain prisoners convicted of Class F to Class I felonies, like Singh, an opportunity to earn early release from confinement at a rate of one day of PAT for every two or three days, respectively, served in prison that the prisoner "does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties." Section 302.113(9h) required the DOC to promulgate rules which, if met, permitted the DOC to release a prisoner from confinement early provided the prisoner was serving a sentence for a nonviolent Class F to Class I felony, the prison social worker or extended supervision agent had reason to believe the person would not engage in assaultive activity if released, and the prisoner was within one year of his or her extended supervision eligibility date. Under § 304.06(1)(bg)3., certain persons sentenced for a Class F to Class I felony committed prior to October 1, 2009 (which includes Singh's first offense), could apply for release from confinement when he or she had served at least seventy-five percent of the confinement portion of his or her bifurcated sentence.[3]

---

[3] In each case, if a prisoner was released from confinement early, his or her term of extended supervision would be in-

¶ 7. The 2011 act repealed WIS. STAT. §§ 302.113(9h) and 304.06(1)(bg)1. and 3. and eliminated the PAT provisions of § 302.113(2)(b), thereby precluding prisoners from earning PAT after August 3, 2011. *See* 2011 Wis. Act 38, §§ 38, 46, 58. The 2011 act also created WIS. STAT. § 973.198, which preserved prisoners' opportunity for early release based upon PAT they had earned between October 1, 2009, and August 3, 2011, but modified the procedures for securing such release. 2011 Wis. Act 38, § 96; *see also State v. Carroll*, 2012 WI App 83, ¶ 4, 343 Wis. 2d 509, 819 N.W.2d 343 (discussing the statutory changes to PAT in the 2011 act).

██

¶ 8. Singh seeks a writ of habeas corpus; whether such relief is available to him is a question of law we review de novo. *State v. Pozo*, 2002 WI App 279, ¶ 6, 258 Wis. 2d 796, 654 N.W.2d 12. Habeas corpus is available "only where the petitioner demonstrates: (1) restraint of his or her liberty, (2) which restraint was imposed contrary to constitutional protections or by a body lacking jurisdiction, and (3) no other adequate remedy [is] available at law." *Id.*, ¶ 8. Kemper does not dispute that the first and third considerations are met, but challenges the second. Accordingly, the primary issue before us is Singh's contention that it is an ex post facto violation to apply the provisions of the 2011 act to preclude him from being eligible for early release under the provisions of the 2009 act, which were in effect when he committed or was convicted and sentenced on his offenses.

creased correspondingly. *See* WIS. STAT. §§ 302.113(3)(e), (9h)(e)2., and 304.06(1)(br) (2009–10).

¶ 9. We begin with the presumption that duly enacted laws are constitutional, *see Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶ 76, 350 Wis. 2d 554, 835 N.W.2d 160, and point out that Singh bears the burden of establishing a violation of the ex post facto clauses of the United States and Wisconsin Constitutions, *see Chappy v. LIRC*, 136 Wis. 2d 172, 184–85, 401 N.W.2d 568 (1987); *see also California Dep't of Corrections v. Morales*, 514 U.S. 499, 510 n.6 (1995). One way a law violates the ex post facto clauses is if it *"makes more burdensome the punishment for a crime"* either after the crime has been committed or after conviction and sentencing. *See State v. Thiel*, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994) (quoting *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)) (emphasis added); *State ex rel. Mueller v. Powers*, 64 Wis. 2d 643, 646, 221 N.W.2d 692 (1974); *State ex rel. Eder v. Matthews*, 115 Wis. 2d 129, 133, 340 N.W.2d 66 (Ct. App. 1983).[4] In interpreting the ex post facto clause of the Wisconsin Constitution, we look to United States Supreme Court decisions interpreting the Ex Post Facto Clause of the United States Constitution. *Thiel*, 188 Wis. 2d at 699. Ultimately, the question is whether a change in the law "creates a significant risk of prolonging [a prisoner's] incarceration" beyond what it would have been under the law in effect at the time the prisoner committed or was convicted and sentenced on the offense. *See Garner v. Jones*, 529 U.S. 244, 250 (2000); *see also Peugh v. United States*, 133 S. Ct. 2072,

---

[4] *See also Weaver v. Graham*, 450 U.S. 24, 32 (1981) ("We have previously recognized that a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed.").

2083 n.4 (2013) (noting that the "relevant question is whether the change in law creates a 'sufficient' or 'significant' risk of increasing the punishment for a given crime") (citing *Garner*, 529 U.S. at 250). Whether a change creates such a risk is "a matter of degree." *Garner*, 529 U.S. at 250 (citations omitted). While "the test cannot be reduced to a 'single formula,' " *Peugh*, 133 S. Ct. at 2082 (quoting *Garner*, 529 U.S. at 250 (quoting *Morales*, 514 U.S. at 509)), "mere speculation or conjecture that a change in law will retrospectively increase the punishment for a crime will not suffice to establish a violation of the Ex Post Facto Clause," *id.* at 2082. Further, only those portions of a new law found to be ex post facto are void as unconstitutional; "any severable provisions which are not ex post facto may still be applied." *Weaver v. Graham*, 450 U.S. 24, 36 n.22 (1981).

¶ 10. Singh was convicted and sentenced on his first offense and committed his second offense when the early release provisions of the 2009 act were in effect. Kemper does not dispute Singh's contention that he has reached his early release eligibility dates related to these offenses under Wis. Stat. §§ 302.113(2)(b) and (9h) and 304.06(1)(bg)1. & 3. (2009–10), nor that the 2011 act eliminated his eligibility for early release under these provisions. The enactment of the 2011 act has resulted in Singh being required to serve the full term of the initial confinement portion of his sentence for these two offenses while the law in effect when he committed or was convicted and sentenced on them afforded him the opportunity to be released earlier. Because we conclude that eliminating this opportunity results in a significant risk of prolonging Singh's incarceration, the portions of the 2011 act which eliminate

Singh's eligibility for early release under these 2009 act provisions violate the ex post facto clauses when applied to these offenses.

¶ 11. Our supreme court's decision in *Mueller* provides guidance.[5] The petitioners in *Mueller*, prison inmates, had been convicted and sentenced prior to a statutory change which increased from two years to five the prison time they had to serve before becoming eligible for parole consideration. *See Mueller*, 64 Wis. 2d at 644–45. They argued that retroactive application of the new law to them constituted an ex post facto law prohibited by the state and federal constitutions. *Id.* at 645. Our supreme court agreed, concluding that such retroactive application "in a very real and practical sense imposes an additional penalty" and "ha[d] a substantial effect upon petitioners' punishment." *Id.* at 647. The court specifically recognized that "[a]lthough the decision to refuse or grant parole lies within the discretion of the department, Wisconsin law grants petitioners as a matter of right the opportunity to be considered for parole after serving a given period of time. A retroactive increase of this period violates petitioners' constitutional rights." *Id.*

¶ 12. This holding is in accord with United States Supreme Court precedent as exemplified by *Lindsey v. State of Washington*, 301 U.S. 397 (1937), and applied more recently in *Morales*. In *Lindsey*, the Court "established the proposition that the Constitution 'forbids the application of any new punitive measure to a crime already consummated.' " *Morales*, 514 U.S. at 505 (quoting *Lindsey*, 301 U.S. at 401). At the time the petitioners in *Lindsey* committed their crimes, the law provided

---

[5] Although Singh relies heavily upon *State ex rel. Mueller v. Powers*, 64 Wis. 2d 643, 221 N.W.2d 692 (1974), in his brief-in-chief, Kemper does not address the case in his response.

for a maximum sentence of "*not more than* fifteen years"—in short, "the prisoners could have been sentenced for a maximum term less than" fifteen years. *Lindsey*, 301 U.S. at 398, 400 (emphasis added). Prior to petitioners' being sentenced, however, a new law was enacted which *required* judges to sentence petitioners to fifteen years, with petitioners only able to secure an earlier release through, as best stated by the *Morales* Court, "the grace of the parole board." *Morales*, 514 U.S. at 505 (discussing *Lindsey*, 301 U.S. at 398–99).

¶ 13.  The *Lindsey* Court recognized that while a sentencing court could have sentenced a petitioner to fifteen years under the old law, "[t]he effect of the new statute is to make mandatory what was before only the maximum sentence." *Lindsey*, 301 U.S. at 400. The Court held that "an increase in the possible penalty is ex post facto . . . regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier." *Id.* at 401 (citations omitted); *see also Weaver*, 450 U.S. at 32 n.17, 35–36 (commenting that "a law may be retrospective . . . if it changes the maximum sentence from discretionary to mandatory," and finding an ex post facto violation in a statutory lowering of "gain-time" credits prisoners could earn because "an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the repealed provision . . . than he could for the same conduct under the new provision . . . constrict[ing] the inmate's opportunity to earn early release, and thereby mak[ing] more onerous the punishment for crimes committed before its enactment.").

531

¶ 14. Kemper points to *Morales* in arguing that the retroactive elimination of previously available early release opportunities is not the "focus" of the ex post facto inquiry. *Morales* is of little assistance to Kemper.

¶ 15. Morales was a twice-convicted murderer, and under the law in effect at the time of his second murder, he would have been entitled to annual parole consideration hearings. *Morales*, 514 U.S. at 502–03. The law was changed following the second murder, however, to allow a parole board to defer subsequent hearings for up to three years for prisoners who were convicted of more than one offense of taking a life, so long as the board found that it was not reasonable to expect parole to be granted at a hearing during the intervening years. *Id.* At Morales's initial parole hearing, the board deferred his second parole hearing for three years. *Id.* Morales challenged the change in the law on ex post facto grounds. *Id.* at 504.

¶ 16. In rejecting his challenge, the *Morales* Court specifically noted that the new law "left unchanged the substantive formula for securing any reductions to [the 15 years to life] sentencing range . . . . The amendment had no effect on the standards for fixing a prisoner's initial date of 'eligibility' for parole . . . or for determining his 'suitability' for parole and setting his release date." *Id.* at 507. The Court distinguished the case before it from prior Supreme Court cases (including *Lindsey*) addressing laws "which had the purpose and effect of enhancing the range of available prison terms," and further observed that "[r]ather than changing the sentencing range applicable to covered crimes, [this law change] simply 'alters the method to be followed' in fixing a parole release date under identical substantive standards.' " *Id.* at 507–08 (citations omitted).

¶ 17.  The *Morales* Court stated that when evaluating the effect of a change in the law, "we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. It held that the change before it did not violate the ex post facto clause because it was only "speculative" whether the change would actually "increas[e] the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause." *Id.* The Court concluded that actual harm to prisoners was "speculative" because the statutory change:  (1) "applie[d] only to a class of prisoners for whom the likelihood of release on parole is quite remote . . . those prisoners who have been convicted of 'more than one offense which involves the taking of a life' "; (2) had "no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings," which was important because the change in the law would have "no effect on any prisoner unless the [parole board] has first concluded, after a hearing, . . . that 'it is not reasonable to expect that parole would be granted at a hearing during the following years' "; (3) "retain[ed] the authority [of the parole board] to tailor the frequency of [parole] suitability hearings to the particular circumstances of the individual prisoner"; and (4) along with the record, "provide[d] no basis for concluding that a prisoner who experiences a drastic change of circumstances would be precluded from seeking an expedited hearing from the [parole board]." *Id.* at 510–13 (emphasis omitted). Further, the Court noted that, in California, a prisoner's parole *release* date would come years after a finding of suitability, and the parole board retained discretion to expedite the release date where

533

appropriate. *Id.* at 513. In short, the *Morales* Court concluded that the statute did not violate the ex post facto clause because there was almost no chance it would actually result in longer confinement for any prisoner than under the prior statute. *Id.* at 512. The Court specifically clarified that it was "express[ing] no view as to the constitutionality" of other statutes "that might alter the timing of parole hearings under circumstances different from those present here." *Id.* at 509 n.5.

¶ 18. The statutory changes at issue in this case are markedly different from those in *Morales*. Application of several of the 2011 act provisions to Singh's offenses has the effect of lengthening his time confined in prison beyond what he well may have experienced under the law as it stood when he committed or was convicted and sentenced on the offenses. The changes do not merely adjust the date at which Singh might first become eligible for early release, they altogether eliminate the early release opportunities the law previously afforded him. While the 2011 act preserves early release eligibility for prisoners who earned PAT between October 1, 2009, and August 3, 2011, the act prevents Singh from earning PAT after August 3, 2011, even though the law in effect when he committed or was convicted and sentenced on his crimes had no such limitation. With the enactment of the 2011 act, there simply is no opportunity for early release based upon Wis. Stat. §§ 302.113(9h) and 304.06(1)(bg)3. (2009–10), or to earn early release based upon PAT while in a prison after August 3, 2011, under §§ 302.113(2)(b) or 304.06(1)(bg)1. Further, as a Class H offender, Singh is in the second-lowest felony class, *see* Wis. Stat. § 939.50, and thus there is no reason here, as there was in *Morales*, to conclude Singh would not have been able

534

to secure early release had the early release provisions not been eliminated by the 2011 act. In his petition, Singh asserts that he has "met the criteria for earning PAT." We can find nothing in the record or briefing where Kemper calls this into question, other than Kemper's general assertion that Singh is not eligible for PAT due to enactment of 2011 Wis. Act 38.[6]

¶ 19.   When Singh committed or was convicted and sentenced on his offenses, the 2009 act and its multiple early release opportunities were the law. Completely eliminating Singh's eligibility for any of these opportunities ensured Singh would serve the full amount of confinement time to which he was sentenced, resulting in a significant risk that he would serve more time in prison than under 2009 Wis. Act 28. The ex post facto clauses prohibit this.

*Role of the Sentencing Court*

¶ 20.   Singh also challenges the WIS. STAT. § 973.198 provision that changes the role the sentencing court plays in reviewing prisoners' potential early release based upon PAT.[7] Singh has not convinced us that this procedural change violates the ex post facto clauses.

---

[6] While Singh ultimately has the burden of persuading us that the change in the law creates a significant risk of keeping him confined longer, *see California Dep't of Corrections v. Morales*, 514 U.S. 499, 510 n.6 (1995) (Singh's burden), and *Garner v. Jones*, 529 U.S. 244, 251 (2000) ("significant risk" standard), Kemper is the warden of the prison where Singh is confined, yet he in no way intimates that the nature of Singh's offenses, his behavior at the prison, or any other factors suggest he would not be released early under one or more of the relevant provisions of 2009 Wis. Act 28.

[7] Despite Singh arguing this issue in four paragraphs of his brief-in-chief, Kemper ignores the issue in his response brief.

¶ 21. Under Wɪs. Sᴛᴀᴛ. §§ 302.113(2)(c) and 304.06(1)(bk) (2009–10), the sentencing court would be notified of a planned early release pursuant to §§ 302.113(2)(b) and 304.06(1)(bg), and the court could hold a hearing to approve, reject, or modify the planned release. *See* §§ 302.113(2)(c)1. and 304.06(1)(bk)1. The release could also proceed if the court chose not to hold a hearing. *Id.* The 2011 act modified the review process of a pending early release based upon PAT. Under the 2011 act and Wɪs. Sᴛᴀᴛ. § 973.198, a prisoner seeking early release based upon PAT earned between October 1, 2009, and August 3, 2011, must petition the sentencing court to adjust his or her sentence. The court must then either deny the petition or hold a hearing and approve or reject the request. *See* § 973.198(3), (5).

¶ 22. A procedural change in the law is one that "simply alter[s] the methods employed in determining" whether the punishment is to be imposed rather than "chang[ing] . . . the quantum of punishment attached to the crime." *Dobbert v. Florida*, 432 U.S. 282, 293–94 (1977). And while a procedural change, in some cases, may have a substantive impact that violates the ex post facto clauses, *see Weaver*, 450 U.S. at 31 n.12, "speculative and attenuated possibilit[ies]" of increasing a prisoner's actual term of confinement do not violate the clauses, *see Morales*, 514 U.S. at 509. Because a significant risk of prolonged confinement is not inherent in the framework of the Wɪs. Sᴛᴀᴛ. § 973.198 procedural change, such risk must be demonstrated on the record or an ex post facto violation will not be found. *See Garner*, 529 U.S. at 251. Singh has not met his burden of proving this change in the method for securing early release based upon PAT violates the ex post facto clauses.

¶ 23. Singh correctly points out that under the old law, if a sentencing court was notified of an inmate's pending release based upon PAT and declined to hold a hearing on the matter, early release to extended supervision could proceed, while under the new law, an inmate will not secure release unless the court holds a hearing and determines that release is appropriate. Ultimately, however, under the old and new law, the sentencing court is notified of the potential release based upon PAT and makes a discretionary decision to grant or deny early release. Under the old law, release could be effectuated by the court either declining to hold a hearing or holding a hearing and granting release, and could be denied by the court holding a hearing and ordering the inmate to remain in prison. WIS. STAT. §§ 302.113(2)(c), 304.06(1)(bk) (2009–10). Under the new law, the court can grant release after holding a hearing, or deny release, either with or without a hearing. *See* WIS. STAT. § 973.198(3), (5).

¶ 24. We do not presume a sentencing court makes any of these decisions lightly. Under both acts, the court has broad discretion with regard to releasing Singh early or requiring him to serve the full period of confinement to which he was sentenced, and our holding rests upon the assumption that a sentencing court would exercise its discretion in accordance with its decision regarding the merits. And, while Singh contends the new procedures are "more onerous," he has identified nothing in WIS. STAT. § 973.198 or other law that would prohibit a court from holding a fairly brief telephonic hearing to satisfy the hearing requirement for release approval. Here the statutory change merely altered the method for determining whether early release based upon PAT would be granted.

537

¶ 25. Singh alleges that there have been fewer PAT-based early releases since the enactment of 2011 Wis. Act 38, but provides no proof in this regard or proof that any such change in releases is the result of the sentencing court's modified role under WIS. STAT. § 973.198. *See Garner*, 529 U.S. at 255 ("When the rule does not by its own terms show a significant risk, the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation . . . that its retroactive application will result in a longer period of incarceration than under the earlier rule."). "Without knowledge of whether retroactive application of [the change] increases, to a significant degree, the likelihood or probability of prolonging [Singh's incarceration]," Singh's claim "rests upon speculation." *See id.* at 256. Unlike the loss of eligibility for early release discussed above, Singh has failed to establish that the procedural changes set forth in § 973.198 create a significant risk of prolonging his confinement.

*Singh is not entitled to PAT for time spent in jail*

¶ 26. Singh also contends that not only should he be eligible for PAT for days he spent in a prison, which were all subsequent to the August 3, 2011 change in the law, but that he also should be eligible for PAT for the days he spent in the county jail prior to arriving at prison. Kemper responds that the time Singh spent in the county jail is irrelevant to earning PAT because he could only earn PAT while confined in a prison. We agree with Kemper.

¶ 27. Singh looks to our decision in *State v. Harris*, 2011 WI App 130, 337 Wis. 2d 222, 805 N.W.2d 386, for support. In that case, Harris was sentenced to ten months in jail on one count and to a bifurcated seven-year prison sentence on another count. *Id.*, ¶ 3. At the

time of sentencing, he had already served 316 days in the county jail. *Id.* Harris argued that he should be given "good time" on his jail sentence and that the days he served in excess of his good time release date should go toward reducing the confinement portion of his prison sentence. *Id.*, ¶ 4. We held that Harris was not entitled to good time credit on his ten-month sentence because, under Wis. Stat. § 302.113(4) (2009–10), his sentence on the two counts was one, continuous prison sentence and "Wis. Stat. § 973.03(2) provides: '[a] defendant sentenced to the Wisconsin state prisons and to a county jail . . . for separate crimes shall serve all sentences whether concurrent or consecutive in the state prisons.'" *Harris*, 337 Wis. 2d 222, ¶ 9. We concluded that "[i]n light of § 973.03(2), Harris was not, nor would he ever become, an inmate of a county jail . . . . [He] . . . was, under the terms of the statutes, an inmate of the prison system rather than the county jail." *Harris*, 337 Wis. 2d 222, ¶¶ 9–10.

¶ 28. *Harris* does not control our decision. To begin, the *Harris* court did not analyze the statutes we do here, which directly relate to the requirements for PAT eligibility. The plain reading of Wis. Stat. §§ 302.113(2)(b) and 304.06(bg)1. (2009–10) leads to the conclusion that only days actually spent in a prison are eligible for PAT consideration. Those sections provide that inmates may earn one day of PAT for every two or three days served, respectively, during which the inmate "does not violate *any regulation of the prison* or does not refuse or neglect to perform required or assigned duties." (Emphasis added.) The italicized language does not appear to make reference to the prison system in a broad sense, as in *Harris*, but specifically to the actual facility—*the* prison—where the inmate is confined. We further note that these provisions of the

2009 act were enacted more than two years before our decision in *Harris*. Thus, we have no reason to assume that when the legislature wrote the words requiring an inmate to follow the "regulation[s] of the prison" in order to earn PAT, it envisioned it was also including within that phrase days actually spent in a county jail.

¶ 29. This reading is reinforced by the plain language of WIS. STAT. § 302.113(3)(a), which states: "The *warden* or *superintendent* shall keep a record of the conduct of each inmate subject to this section, specifying each infraction of the rules." (Emphasis added.) Wardens and superintendents run prisons, *see, e.g.*, WIS. STAT. §§ 302.025, 302.03, 302.04, 302.07, 302.095(2); sheriffs run county jails, *see* WIS. STAT. § 59.27. Further, as a practical administrative matter, Singh has identified no law suggesting a county sheriff is to report to prison officials regarding an inmate's behavior record for PAT purposes or detailing a procedural mechanism for such reporting. Singh is not eligible for PAT based upon the time he served in the county jail.[8]

## CONCLUSION

¶ 30. At the time Singh committed or was convicted and sentenced on the two offenses addressed herein, our statutes provided that he would be eligible for early release based upon the provisions of WIS. STAT. §§ 302.113 and 304.06 (2009–10). The ex post facto

---

[8] Singh also cites to WIS. STAT. § 973.155(3): "The credit provided in [subsec.] (1) or (1m) shall be computed as if the convicted offender had served such time in the institution to which he or she has been sentenced." On their face, these subsections appear to have nothing to do with PAT, and Singh has developed no argument articulating how they might relate to PAT or how they might bear on whether he is eligible for PAT for his time in jail.

clauses of the United States and Wisconsin constitutions require that he still be eligible for early release pursuant to §§ 302.113(9h) and 304.06(1)(bg)3., and those two provisions shall apply to Singh as if they had not been repealed. With regard to §§ 302.113(2)(b) and 304.06(1)(bg)1.—the PAT provisions—the clauses require that he still be eligible to earn PAT in the same manner he could under 2009 Wis. Act 28 for any time spent confined in a prison related to these two offenses, i.e., he may earn PAT for such time served in a prison after August 3, 2011.[9] For Singh to ultimately secure early release based upon PAT, however, the procedures of WIS. STAT. § 973.198 will apply, including the modified role of the sentencing court following a petition by Singh. Singh is not entitled to PAT based upon time he served in a county jail.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.

■■■■■

[9] WISCONSIN STAT. § 973.198(1) also refers to a limit on earning positive adjustment time to only time "earned between October 1, 2009, and August 3, 2011." For the reasons set forth in this decision, this August 3, 2011 limitation also does not apply to Singh's offenses addressed herein.