¶ 224.
REBECCA G. BRADLEY, J.
(dissenting). I dissent from the lead opinion because Singh has not proven any ex post facto violation in this case. As the lead opinion explains, Singh contends that 2011 Act 38, which repealed Wis. Stat. § 302.113(2)(b)(2009-10) and § 304.06(1)(bg)1.(2009-10) and created Wis. Stat. § 973.198 (2011-12), was an ex post facto law.[1] Singh argues the repealed statutes eliminated the opportunity that previously existed to earn early release through positive adjustment time (PAT), which Singh argues increased his punishment. He also contends the process established in § 973.198 delays up to 90 days the release of inmates who earned PAT under the 2009 law and the standards for early release changed under the 2011 law.
*217 ¶ 225. In challenging the 2011 law, Singh must overcome the presumption that legislative enactments are constitutional. See State v. Cole, 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328. This court will indulge "every presumption to sustain the law if at all possible," and will resolve any doubts in favor of upholding the constitutionality of the challenged statute. Id. (citation omitted). Singh bears the heavy burden of proving that the statute is unconstitutional beyond a reasonable doubt. Id.
¶ 226. Because Singh has failed to meet this heavy burden, I would reverse the court of appeals' conclusion that the repeal of the PAT statutes constituted a violation of the ex post facto clause and I would affirm the court of appeals' holding that Wis. Stat. § 973.198 is a procedural change, which does not implicate ex post facto concerns.
I. BACKGROUND
¶ 227. This case presents an unusual factual scenario because Singh committed his first crime before the PAT statutes were enacted, committed his second crime when the PAT statutes were in effect, and committed his third crime after the PAT statutes had been repealed. He was convicted and sentenced on the first crime when the PAT statutes were in effect, but this sentence was stayed and not revoked until after the PAT statutes were repealed. Singh's second and third crimes were joined for the purposes of accepting his plea and sentencing. The plea and sentence on the joined second and third crimes occurred after the PAT statutes were repealed.
¶ 228. Thus, it is critical to decide what date is used in analyzing whether Singh established an ex post facto violation: is it the date Singh committed *218 the crime, the date he was found guilty of the crime, the date he was sentenced, or some combination of the three? The timeline of Singh's crimes, convictions, and sentences against the backdrop of truth-in-sentencing law and the enactment and repeal of the PAT statutes is as follows:
• October 16, 2008: Singh commits the first crime, a class H felony in Waukesha.
• 2008: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine. Truth-in-sentencing law is in effect.
• October 1, 2009: 2009 Wis. Act 28 becomes effective. Act 43 created Wis. Stat. § 302.113(2)(b) and Wis. Stat. § 304.06(l)(bg)l, giving inmates the opportunity to earn PAT days which, if approved by the circuit court, allowed release to extended supervision earlier than originally imposed. This did not ever change the overall length of the sentence; instead, any approved PAT days would be added on to the extended supervision portion of a sentence.
• 2009: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine, which is the same penalty as in 2008.
• March 29, 2010: Singh pleads guilty to the Waukesha crime.
• April 29, 2010: Waukesha County Circuit Court sentences Singh to three years, consisting of 18 months initial confinement, followed by 18 months extended supervision. The sentence is stayed and Singh is given probation with six months of conditional jail time.
*219 • 2010: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine, which is the same penalty as in 2008 and 2009.
• July 25, 2011: Singh commits the second crime, a class H felony in Milwaukee County.
• August 3, 2011: 2011 Wis. Act 38 goes into effect. The Act repeals inmates' opportunity to earn PAT days, except that current inmates are allowed to keep the PAT days earned between October 1, 2009 (the effective date of this part of 2009 Wis. Act 43) and August 3, 2011. 2011 Wis. Act 38 also created Wis. Stat. § 973.198, which provides:
(1) When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.113, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and August 3,2011, he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.
(3) Within 60 days of receipt of a petition filed under sub. (1), the sentencing court shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision.
(5) If the court determines that the inmate has earned positive adjustment time, the court may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 *220 days, and shall lengthen the term of extended supervision so that the total length of the bifurcated sentence originally imposed does not change.
(6) An inmate who submits a petition under this section may not apply for adjustment of the same sentence under s. 973.195 for a period of one year from the date of the petition.
• August 10, 2011: Singh commits another class H felony in Milwaukee County, the third crime.
• November 9, 2011: Singh is convicted in Milwaukee County Circuit Court on both the July 25 and August 10 crimes.
• December 13, 2011: Singh's probation on his Waukesha conviction is revoked.
• December 29, 2011: Milwaukee County Circuit Court sentences Singh to five years each on the two Milwaukee crimes, consisting of two years' initial confinement, followed by three years' extended supervision. The sentence on the July 25, 2011 crime was consecutive to his 2008 Waukesha sentence, but concurrent with the August 10, 2011 sentence. The August 10, 2011 sentence was imposed concurrent to any other sentence.
• 2011: A class H felony had a maximum total sentence of six years, with a maximum initial confinement of three years, plus up to a $10,000 fine, which is the same penalty as in 2008, 2009, and 2010.
• January 4, 2012: Singh starts his prison sentence.
• June 28, 2013: Singh files his habeas petition in circuit court after the Department of Correc *221 tions rejected Singh's request for PAT early release under Wis. Stat. § 302.113(2)(b).
II. ANALYSIS
A
¶ 229. Given this timeline, it is essential to determine what date to use in the ex post facto analysis. The lead opinion followed the court of appeals' direction and lumped together Singh's dates of commission, conviction, and sentencing: "Like the court of appeals, we conclude that because the early release provisions of 2009 Wis. Act 28 were retroactively in effect when Singh was convicted and sentenced for the first offense, as well as at the time he committed the second offense that the retroactive repeal of positive adjustment time in 2011 Wis. Act 28 violates the ex post facto clauses of the Wisconsin and United States Constitutions." Lead op., ¶ 8. The law does not support this conclusion.
¶ 230. In analyzing whether a law is unconstitutionally ex post facto, the date a crime was committed is the correct date to use. Weaver v. Graham, 450 U.S. 24, 28 (1981)("The ex post facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed." (emphasis added; one set of quotation marks and quoted source omitted)). The United States Supreme Court consistently uses the date of commission in conducting an ex post facto analysis. See Garner v. Jones, 529 U.S. 244 (2000); Peugh v. United States, 133 S. Ct. 2072 (2013). This court agreed in State v. Kurzawa, 180 Wis. 2d 502, 509 N.W.2d 712 (1994), that "ex post facto analysis is *222 concerned with changes in the law relative to the time the defendant engaged in his allegedly illegal behavior." Id. at 513.
¶ 231. Courts use the date of commission because the purpose of the ex post facto clause is to provide fair warning as to what conduct will give rise to criminal penalties and what those penalties will be. See Kurzawa, 180 Wis. 2d at 511 (citing Marks v. United States, 430 U.S. 188, 191-92 (1977)). Our Founders included a prohibition against ex post facto laws in the Constitution to ensure against "manifestly unjust and oppressive" laws that punish a person after the fact for conduct that was not punishable before the law existed. See Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798) (opinion of Chase, J.). Colder explained:
The prohibition against their making any ex post facto laws was introduced for greater caution, and very probably arose from the knowledge, that the Parliament of Great Britain claimed and exercised a power to pass such laws, under the denomination of bills of attainder, or bills of pains and penalties; the first inflicting capital, and the other less, punishment. These acts were legislative judgments; and an exercise of judicial power. Sometimes they respected the crime, by declaring acts to be treason, which were not treason, when committed, at other times, they violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit; at other times they inflicted punishments, where the party was not, by law, liable to any punishment; and in other cases, they inflicted greater punishment, than the law annexed to the offence.. .. With very few exceptions, the advocates of such laws were stimulated *223 by ambition, or personal resentment, and vindictive malice. To prevent such, and similar, acts of violence and injustice, I believe, the Federal and State Legislatures, were prohibited from passing any bill of attainder; or any ex post facto law.
Id. at 389 (footnotes omitted).
¶ 232. The ex post facto clause prohibits:
1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.
Id. at 390 (emphasis added). The ex post facto clause's historical meaning is based on fundamental fairness. See id. at 389-90. Singh's case is concerned with the third prohibition: did the 2011 law change his punishment by "inflict [ing] a greater punishment, than the law annexed to the crime, when committed."
¶ 233. What is clear from the ex post facto case law and the reason for the clause's inclusion in our Constitution is that a proper ex post facto analysis focuses on the laws in effect at the time Singh committed the crimes. As seen from the timeline, the PAT laws were not in effect when Singh committed his Waukesha crime in 2008 or when he committed his August 10, 2011 Milwaukee crime. Singh cannot (and does not) argue that his August 10, 2011 crime falls within his ex post facto challenge because this crime occurred after 2011 Wis. Act 38 went into effect. *224 The August 10, 2011 crime is referenced because it is tied to the July 25, 2011 crime via the joint sentencing hearing.
¶ 234. Because a proper ex post facto analysis focuses on the laws in effect at the time Singh committed his crimes, Singh cannot establish any ex post facto violation relating to his 2008 Waukesha crime. At the time Singh committed the 2008 crime, the PAT opportunity did not exist; therefore, 2011 Wis. Act 38's repeal of it does not implicate any ex post facto concerns regarding the 2008 crime.[2] The 2011 law does not increase Singh's sentence attached to the 2008 crime because it makes no change to the punishment that existed at the time Singh committed the 2008 crime.[3]
B
¶ 235. The only crime in this case that was committed when the PAT statutes were in effect was Singh's July 25, 2011 Milwaukee crime. Thus, the dispositive issue is whether Singh proved beyond a reasonable doubt that the enactment of 2011 Wis. Act *225 38 violated the ex post facto clause by taking away Singh's opportunity to earn PAT days on the sentence imposed for the July 25, 2011 crime. Singh has failed to prove the repeal of the PAT statutes resulted in an ex post facto violation.
¶ 236. At the time Singh committed the July 25th Milwaukee crime, Wis. Stat. § 302.113(2)(b) allowed inmates to earn PAT days while in prison. 2011 Wis. Act 38 repealed the PAT statutes, but allowed inmates to keep any PAT days earned from the date the PAT statutes were enacted until the date the PAT statutes were repealed. See Wis. Stat. § 973.198(1). Singh contends 2011 Wis. Act 38 is an unconstitutional ex post facto law because it eliminated his opportunity to earn PAT days, thereby increasing the time he was in prison. The lead opinion holds the 2011 law is an ex post facto law because it makes "the punishment for an offense more burdensome after it was committed." Lead op., ¶ 4.
¶ 237. In order for Singh to succeed on his claim, he must prove beyond a reasonable doubt that the 2011 law changed his punishment, and inflicted a greater punishment than the law annexed to the crime when committed. See Calder, 3 U.S. at 390. Although the United States Supreme Court strayed from this historical meaning of the ex post facto clause over the years, by expanding it to include any change in punishment that disadvantaged a defendant, see Kring v. Missouri, 107 U.S. 221 (1883), Lindsey v. Washington, 301 U.S. 397, 401 (1937), Weaver, 450 U.S. at 32, and Miller v. Florida, 482 U.S. 423, 433-34 (1987), the Court later rejected the "disadvantaged" test.
*226 ¶ 238. In Collins v. Youngblood, 497 U.S. 37, 50, (1990), the Supreme Court overruled Kring v. Missouri:
The holding in Kring can only be justified if the Ex Post Facto Clause is thought to include not merely the Calder categories, but any change which "alters the situation of a party to his disadvantage." We think such a reading of the Clause departs from the meaning of the Clause as it was understood at the time of the adoption of the Constitution, and is not supported by later cases. We accordingly overrule Kring.
Collins, 497 U.S. at 50. Further, in California Department of Corrections v. Morales, 514 U.S. 499 (1995), the Court said the "disadvantage the defendant" language used in Lindsey, Weaver, and Miller "was unnecessary to the results in those cases and is inconsistent with the [ex post facto] framework developed in Collins v. Youngblood, 497 U.S. 37, 41 (1990)." Morales, 415 U.S. at 506 n.3. The Court explained:
After Collins, the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release,".. . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.
Morales, 415 U.S. at 506 n.3 (emphasis added).
¶ 239. In that case, Morales was convicted for a murder committed in 1971 and a second murder in 1980. At the time he committed the murders, California law required annual suitability hearings after the initial parole hearing. Id. at 503. In 1981, the California legislature authorized the Board of Prison *227 Terms (Board) to defer subsequent suitability hearings for up to three years in certain circumstances. Id. In 1989, Morales was denied parole after his initial parole hearing. Id. at 502-03. The Board scheduled his next parole hearing for three years later pursuant to the 1981 law. Id. at 504. Morales claimed he was entitled to an annual parole hearing because that was the law when he committed his crimes, and, as a result, the 1981 law violated the ex post facto clause. Id. The Court refused to interpret the ex post facto clause in a manner to require the judiciary to micromanage an "endless array of legislative adjustments to parole and sentencing procedures," that "might create some speculative, attenuated risk of affecting a prisoner's actual term of confinement by making it more difficult for him to make a persuasive case for early release." Id. at 508-09. Instead, the Court examined whether the new legislation produced "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 509. The Court went on to conclude the legislation at issue in Morales did not violate the ex post facto clause. Id. at 510-14.
¶ 240. In Peugh, 133 S. Ct. 2072, the Supreme Court again analyzed the ex post facto clause. It held that a defendant who committed crimes in 1999 and 2000, but was not sentenced until 2010, should be sentenced using the sentencing guidelines that were in effect at the time he committed the crimes, rather than at the time he was sentenced. Id. at 2078-79, 2081. In Peugh, the Court emphasized that the "basic principles of fairness that animate the Ex Post Facto Clause" are ensuring that individuals have fair warning of applicable laws and are not saddled with vindictive legislative action. Id. at 2084-85. The Court de *228 scribed the ex post facto inquiry as "whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes" and emphasized that "mere speculation or conjecture that a change in law will retrospectively increase the punishment for a crime will not suffice to establish a violation of the Ex Post Facto Clause." Id. at 2081-82 (two sets of quotation marks and quoted sources omitted). Because the retrospective increase in the sentencing guidelines changed Peugh's sentencing range from 30-37 months to 70-87 months, id. at 2078-79, the Court held the new guidelines constituted an ex post facto violation. Id. at 2084.
¶ 241. The Supreme Court's latest pronouncement on ex post facto law focuses on whether the retrospective law causes an increase in the measure of punishment that was attached to the crime when it was committed. There is no doubt that 2011 Wis. Act 38 eliminated the opportunity for inmates then serving sentences to earn PAT days after August 3, 2011. The 2011 law, however, like the change in parole policy in Morales, did not change the sentence Singh received for his July 25, 2011 crime. Rather, it eliminated the opportunity to earn PAT days, which possibly could have led to converting some confinement days to extended supervision time.[4]
*229 ¶ 242. Under the original meaning of the ex post facto clause, courts should "draw a distinction between the penalty that a person can anticipate for the commission of a particular crime, and opportunities for mercy or clemency that may go to the reduction of the penalty." Garner, 529 U.S. at 258 (Scalia, J., concurring).
¶ 243. The PAT statutes at issue here were very different from the mandatory parole cases where courts held the new law produced ex post facto violations. For example, in Weaver, the ex post facto law involved reducing mandatory gain time credits. The gain-time credits were automatic under both the old and new legislation. Id,., 450 U.S. at 36. Under the old law, an inmate was automatically entitled to receive 5, 10 or 15 days off the sentence according to the good conduct formula whereas the new law substantially reduced the gain-time formula to 3, 6 or 9 days off the sentence. Id. at 26, 36. In Mueller, the new law changed parole eligibility from two years to five years. Id., 64 Wis. 2d at 645. Under the old law, inmates were "as a matter of right" considered for parole after serving two years in prison. Id. at 647. *230 The new law changed that "right" to five years. Id. at 645. These facts distinguish between an automatic right, which was known to be a part of the sentence, and the situation presented here where an inmate had an opportunity to possibly earn PAT early release, which does not change the overall length of the sentence imposed.[5] Neither Weaver nor Mueller involved the opportunity to possibly have PAT days shorten confinement days but lengthen supervision time. It is also significant that both Weaver and Mueller relied on the "disadvantage to a defendant" language to conclude that the laws in those cases violated the ex post facto clause. As noted, that language has been withdrawn, and is not the proper test to use in this ex post facto analysis. See Collins, 497 U.S. at 50; State v. Thiel, 188 Wis. 2d 695, 702-03, 524 N.W.2d 641 (1994)(withdrawing Mueller's language that ex post facto test reviews whether new law "disadvantages" a defendant).
¶ 244. It is also worth noting that the punishment for Singh's crime — a class H felony — has not changed. It was six years with up to a maximum of *231 three years' confinement plus up to a $10,000 fine in 2008, 2009, 2010 and 2011. 2011 Wis. Act 38 did not change the punishment annexed to the crime Singh committed at the time he committed it. See State ex rel. Britt v. Gamble, 2002 WI App 238, ¶ 24, 257 Wis. 2d 689, 653 N.W.2d 143 (holding that subsequently repealing the law in existence at the time the crime was committed that gave defendant the opportunity to ask for early release was not ex post facto because the sentence imposed was not extended). The 2011 law did not change the punishment "attached" to the crime Singh committed on July 25, 2011. It removed Singh's hope or opportunity to earn conversion of confinement days into extended supervision days, but it did not increase the sentence attached to the crime he committed.
¶ 245. It is further significant that the 2011 legislation does not offend a faithful application of the ex post facto clause's historical meaning. The 2011 law did not inflict a greater punishment than what already existed for Singh's crime when he committed it. The 2009 PAT statutes gave inmates an opportunity to earn PAT days with the possibility of converting confinement days into extended supervision days. The 2009 PAT statutes were not mandatory and release under the statutes was not guaranteed. The 2009 PAT statutes did not change the overall length of the sentence imposed and there is nothing to suggest the legislature repealed the PAT statutes to be oppressive or vindictive. To the contrary, Wis. Stat. § 973.198(1) included language to ensure inmates could keep the PAT time already earned, which demonstrates fairness and mercy.
¶ 246. Furthermore, Singh cannot benefit from PAT even though it existed at the time he committed *232 his July 25, 2011 crime because he was not an inmate when the opportunity to earn PAT days existed. Singh's claim that the 2011 legislation increased the measure of his punishment is speculative. Even if Singh had been an inmate and able to earn PAT days, there is no evidence that his request for early PAT release would have been granted. Thus, his claim is pure speculation, which cannot support an ex post facto violation.
¶ 247. Accordingly, I conclude Singh failed to establish any ex post facto violation. I would reverse that part of the court of appeals' opinion holding that the 2011 legislation violated the ex post facto clause.
C
¶ 248. Singh also argues Wis. Stat. § 973.198 violates the ex post facto clause because it delays the time, up to 90 days, to release inmates who have successfully petitioned for early release and because it changes the standard associated with making PAT-based early release decisions. Section 973.198 does change the procedure with respect to PAT petitions. Under the 2009 law, inmates petitioned the "earned release review commission" and the commission notified the sentencing court, which then decided whether to grant or deny the inmate's request. Under the 2011 law, the commission's participation in the process is eliminated and the inmate petitions the sentencing court directly. In addition, Singh argues the 2011 law altered the timing of the PAT petitions: in 2009, the process started before the eligibility date and in 2011, the process starts on the eligibility date.
¶ 249. The court of appeals held that the changes in Wis. Stat. § 973.198 are procedural and therefore do *233 not implicate ex post facto. I agree with the court of appeals on this issue for the reasons it explained in its opinion:
A procedural change in the law is one that "simply alter [s] the methods employed in determining" whether the punishment is to be imposed rather than "chang[ing] . .. the quantum of punishment attached to the crime." And while a procedural change, in some cases, may have a substantive impact that violates the ex post facto clauses, "speculative and attenuated possibilities]" of increasing a prisoner's actual term of confinement do not violate the clauses. Because a significant risk of prolonged confinement is not inherent in the framework of the Wis. Stat. § 974.198 procedural change, such risk must be demonstrated on the record or an ex post facto violation will not be found. Singh has not met his burden of proving this change in the method for securing early release based upon PAT violates the ex post facto clauses.
Singh v. Kemper, 2014 WI App 43, ¶ 22, 353 Wis. 2d 520, 846 N.W.2d 820 (citations omitted). Although the parties disagree as to whether the language of the statutes under the 2009 law and the 2011 law differ with respect to when the request to start the potential early release process starts, this disagreement need not be resolved. The change in the law removing the commission as the intermediary and altering the timing of petitions are both procedural changes, which do not implicate ex post facto concerns. See Dobbert v. Florida, 432 U.S. 282, 293-94 (1977)("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."). I would affirm that part of the court of appeals opinion holding § 973.198 did not violate the ex post facto clause because the new statute ad *234 dresses procedure rather than "the quantum of punishment attached to the crime." See id. at 294.
¶ 250. For these reasons, I respectfully dissent.
¶ 251. I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins part C of this opinion.

 All subsequent references to Wis. Stat. § 302.113 and § 304.06 will be to the 2009-10 version of the Wisconsin Statutes, and all subsequent references to Wis. Stat. § 973.198 will be to the 2011-12 version of the Wisconsin Statutes.

 Although the 2009 law allowed inmates sentenced after December 31,1999 to earn PAT days (and Singh was sentenced on the 2008 crime after December 31, 1999), Singh was never an inmate during the effective dates of the 2009 law. By the time Singh became an inmate, the 2011 law was in effect. In comparing the 2011 law to the laws in effect when Singh committed his 2008 crime, no ex post facto concerns arise.

 As noted in the lead opinion at footnote 7, Singh's 2008 Waukesha sentence was amended to one-year jail time. Because PAT only applied to inmates in prison, this sentencing amendment further supports my conclusion that PAT does not apply to Singh's 2008 Waukesha crime. See Singh v. Kemper, 2014 WI App 43, f ¶ 26-29, 353 Wis. 2d 520, 846 N.W.2d 820 (PAT only applied to time in prison, not time spent in jail).

 In Lynce v. Mathis, 519 U.S. 433 (1997), the Supreme Court declared unconstitutional a Florida law that cancelled already earned provisional early release credits. Lynce had been released from prison because he completed his sentence based on time served plus provisional early release credits. Id. at 435-36. Lynce was rearrested and reincarcerated as a result of the new law cancelling the provisional early release credits. Id. at 436. The Court held the Florida statute violated the ex post facto clause because Lynce had already earned and used the early release credits — the law did not merely remove "an *229 opportunity for early release." Id. at 447. The new law put Lynce, who had been released because he completed his sentence, back in prison. Id. As Justice Clarence Thomas, joined by Justice Antonin Scalia explained in a concurring opinion: "The present case [Lynce] involves not merely an effect on the availability of future release credits, but the retroactive elimination of credits already earned and used." Id. at 451. The facts in Singh's case are quite different than Lynce. The 2011 law did not take away PAT days Singh had already earned and used, and the 2011 law did not lengthen the overall sentence imposed. The 2011 law Singh challenges removed an opportunity to possibly convert confinement days to supervision days. It affected the availability of future PAT days, but did not eliminate credits already earned or used.

 Mueller v. Powers applies the ex post facto doctrine both relative to the date of commission of the crime and laws that change after conviction and sentencing. 64 Wis. 2d 643, 646, 221 N.W.2d 692 (1974). This does not change my conclusion that the critical time is what law is in effect on the date of commission of the crime. New legislation will often come after conviction and sentencing as these events naturally occur after the commission of the crime. See also State ex rel. Eder v. Matthews, 115 Wis. 2d 129, 132-133, 340 N.W.2d 66 (Ct. App. 1983)(citing Mueller for the "convicted and sentenced" language in a case where the issue was "when a mandatory release parole violator is returned to prison to serve forfeited good time credit, can the Department order that the forfeited time be treated as a 'new sentence' for the purpose of calculating good time.")(footnote omitted).