STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey A. THIEL, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 93–1724–CR–FT, 93–1725–CR–FT. Oral argument October 13, 1994.—Decided December 20, 1994.*

(Also reported in 524 N.W.2d 641.)

For the defendant-appellant-petitioner there were briefs by *David L. Werth* and *Van Epps and Werth,* Weyauwega and oral argument by *David L. Werth.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

WILLIAM A. BABLITCH, J.  Jeffrey Thiel (Thiel) seeks review of a court of appeals decision prohibiting him from possessing firearms. Thiel was convicted of a felony in 1970. Eleven years later, in 1981, the legislature enacted sec. 941.29, Stats., which prohibits convicted felons from possessing firearms. Thiel challenges the statute as it applies to him, arguing that it

retroactively punishes him for the felony he committed before the statute was enacted, and therefore violates the Ex Post Facto Clause of the Wisconsin Constitution. We disagree. We conclude that the statute was not enacted with the intent to punish convicted felons and as such is not an ex post facto law as applied to him. Rather, the restriction on convicted felons' ability to possess firearms comes about incident to firearm regulation out of concerns of public safety. Accordingly, we affirm.

The facts are undisputed. Thiel was convicted of a felony in 1970. In 1972, he received a certificate of discharge from the Department of Health and Social Services, Division of Corrections (DOC) which stated: "Any civil rights lost as a result of conviction herein described, are restored by virtue of this discharge, under the provisions of section 57.078 [1971] of the Statutes of the State of Wisconsin."

In August 1992, Thiel was charged in two separate misdemeanor complaints for actions involving former spouses. Pursuant to a plea bargain, he pled no contest. The circuit court initially sentenced Thiel according to the terms of the plea bargain. He was placed on probation and prohibited from possessing firearms except during deer hunting season and then only with the permission of his probation officer. The District Attorney moved to modify the sentence, however, after being informed that Thiel had been convicted of a felony in 1970. The court granted the motion. As a result of this prior conviction, the court felt bound by sec. 941.29, Stats.,[1] to prohibit Thiel from possessing firearms until 1993, and then only if Thiel complied with all the

---

[1] Section 941.29, Stats., (Supp. 1994), provides in relevant part:

**Possession of a firearm**

terms of probation and received relief from the statute pursuant to sec. 941.29(5)(a) and (b).[2]

Thiel challenged the modification arguing that the use of sec. 941.29, Stats., retroactively "punished" him in violation of the Ex Post Facto Clause of the Wisconsin Constitution.[3] He maintained that prior to the statute, his civil rights, including his right to possess a firearm, were restored by the certificate of discharge from the DOC, and that to deprive him of that right would retroactively punish him by "inflicting a greater punishment in the law annexed to the crime at the time it was committed." The circuit court upheld the modification against Thiel's challenge. In an unpublished opinion, the court of appeals affirmed.

The issue here is whether sec. 941.29, Stats., as applied, violates the Ex Post Facto Clause of the Wisconsin Constitution. To resolve this issue, we first

---

(1)   A person is subject to the requirements and penalties of this section if he or she has been:

(a)   Convicted of a felony in this state.

. . .

(2)   Any person specified in sub. (1) who, subsequent to the conviction for the felony . . . or subsequent to the finding of not guilty or not responsible by reason of insanity or mental disease, defect or illness, possesses a firearm is guilty of a Class E felony.

[2] Sections 941.29(5)(a) and (b), Stats. (Supp. 1994), provide as follows:

(5)   This section does not apply to any person specified in sub. (1) who:

(a)   Has received a pardon with respect to the crime or felony specified in sub. (1) and has been expressly authorized to possess a firearm under 18 USC app. 1203; or

(b)   Has obtained relief from disabilities under 18 USC 925(c).

[3] The prohibition on ex post facto laws in the Wisconsin Constitution is found in Article I § 12:

Section 12.   No . . . ex post facto law . . . shall ever be passed . . ..

determine what constitutes an ex post facto law. The definition cited most often and relied on by Thiel is found in *State ex rel. Mueller v. Powers,* 64 Wis. 2d 643, 645, 221 N.W.2d 692 (1974): "A law which imposes a punishment for an act which was not punishable at the time it was committed, or imposes an additional punishment to that then prescribed . . .," "or which alters the situation of the accused to his disadvantage . . .." *Id.* at 646, *citing Medley, Petitioner,* 134 U.S. 160 (1890). As the State notes, the latter part of the definition cited in *Mueller* was taken from United States Supreme Court cases subsequently overruled. Accordingly, we reexamine the relevant Wisconsin and United States Supreme Court case law to determine what constitutes an ex post facto law.

█

We have long looked to the pronouncements of the United States Supreme Court in construing the Ex Post Facto Clause of the Federal Constitution[4] as a guide to construing the Ex Post Facto Clause of the Wisconsin Constitution. *See, e.g., Mueller,* 64 Wis. 2d at 645–46; *Wis. Bingo Sup. & Equip. Co. v. Bingo Control Bd.,* 88 Wis. 2d 293, 304–05, 276 N.W.2d 716 (1979). The Supreme Court in *Collins v. Youngblood,* 497 U.S. 37 (1990), recently set forth the history of the decisions interpreting the Ex Post Facto Clause. The Court cited to *Calder v. Bull,* 3 Dall. 386 (1798), as the seminal decision explicating the variety of ex post facto

---

[4] The prohibition on ex post facto laws by the federal government and by the states in the United States Constitution is found in Article I §§ 9 and 10, respectively:

Section 9.

. . .

No bill of attainder or ex post facto law shall be passed.
Section 10. No state shall . . . pass any . . . ex post facto law . . ..

laws prohibited. *Collins,* 497 U.S. at 42. The categories of ex post facto laws in *Calder* were summarized as follows:

> 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*' *Id., citing Beazell v. Ohio,* 269 U.S. 167, 169 (1925).

The *Collins* court noted that early decisions of the Supreme Court viewed the categories set forth in *Calder* as the exclusive ex post facto prohibitions. *Id.* Later decisions, however, departed from the rigid adherence to *Calder* and expanded the prohibitions of the Clause. For example, in *Kring v. Missouri,* 107 U.S. 221 (1883), the Court included within ex post facto prohibitions, laws that altered a defendant's situation to his or her disadvantage. In *Kring,* a law existed at the time the petitioner committed the crime which provided that a defendant's plea of guilty to second-degree murder served as an acquittal to first-degree murder. *Id.* at 223–24. After petitioner committed the crime but prior to entering a plea, that law was abrogated making it possible to charge and convict petitioner with second-degree murder and subsequently with first-degree murder. *Id.* The Supreme Court struck down the law as ex post facto as applied to Kring, and in the process adopted a new category of ex post facto laws. For the first time, the Court interpreted the Ex Post Facto Clause to embrace any change in the law which, " 'in

700

relation to the offence or its consequences, alters the situation of a party to his disadvantage.' " *Id.* at 228–29.

This court in *Mueller* adopted that same language from a later Supreme Court case, *Medley. Mueller,* 64 Wis. 2d at 643 (citing, *Medley,* 134 U.S. at 171 (1890)). In *Mueller,* inmates in prison challenged the application of a statute which extended the time a prisoner must serve before being eligible for parole. *Id.* at 645. The *Mueller* court held that the statute, which increased the length of the sentence, clearly violated the Ex Post Facto Clause under the standard set forth in *Medley:*

> '. . . any law which was passed after the commission of the offense for which the party is being tried is an *ex post facto* law, when it inflicts a greater punishment than the law annexed to the crime at the time it was committed . . . *or which alters the situation of the accused to his disadvantage* . . .' (Emphasis added). *Mueller,* 64 Wis. 2d at 646, *citing Medley,* 134 U.S. at 171.

The court stated that a more difficult situation would be where a legislative act did not increase the sentence but in some manner "alters the punishment of the offender to his detriment . . ." after he had committed the crime or after he was sentenced. *Id.*

It is this language that Thiel uses to challenge sec. 941.29, Stats. He contends that hunting is an important part of life in Wisconsin. To deprive him of that enjoyment, he argues, alters his present situation (as someone who has had his rights restored) to his disadvantage, and retroactively punishes him for his past felony.

Thiel's reliance on the language in *Mueller* which extends ex post facto prohibitions to laws that alter the situation of an accused to his or her disadvantage, is misplaced. In 1989, the Supreme Court in *Collins* explicitly overruled *Kring* declaring that the *Kring* Court's deviation from *Calder* was unjustified and departed from the meaning of the Clause as it was understood at the time the Constitution was adopted. *Collins,* 497 U.S. at 49–50. *Collins* underscored that the proper definition of an ex post facto law is the definition originally stated in *Calder* and later summarized in *Beazell.* Utilizing this definition, the Court held that the retroactive application of a statute, which allowed appellate courts to reform an unauthorized verdict without the necessity of remand for retrial, did not violate the Ex Post Facto Clause because the statute did not fit within the categories expounded in *Calder:*

> The Texas statute allowing reformation of improper verdicts does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to the law at the time when the act was committed. Its application to respondent therefore is not prohibited by the *Ex Post Facto* Clause of Art. I, § 10. *Id.* at 52.

We briefly referenced the decision in *Collins* and its potential effects on changes in the law of double jeopardy in *State v. Kurzawa,* 180 Wis. 2d 502, 514 n.5, 509 N.W.2d 712 (1994).

Because certain language in *Mueller* was taken from cases subsequently overruled by *Collins,* we now withdraw any language in *Mueller* which would expand the definition of an ex post facto law beyond that expressed in *Collins.* In doing so, we do not adopt Thiel's suggestion to apply this definition prospectively only. We hold that an ex post facto law, prohibited by the Wisconsin Constitution, is any law: " 'which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed . . ..' " *Collins,* 497 U.S. at 42.

We next determine whether sec. 941.29, Stats., is an ex post facto law under the definition stated above. Specifically, we determine whether sec. 941.29 makes more burdensome the punishment for Thiel's past felony (Thiel does not contend that the law "punishes as a crime an act previously committed, which was innocent when done . . ." or an act "which deprives one charged with crime of any defense available according to law at the time when the act was committed"). We conclude that it does not.

We addressed the issue of what constitutes punishment in *Wis. Bingo Sup. & Equip. Co.* in the context of determining whether a law, prohibiting a petitioner from obtaining a bingo supplier's license because of his father's past gambling activities, is an ex post facto law. We began with the rule from *Trop v. Dulles,* 356 U.S. 86, 96 (1958): "Where the disability is imposed to accomplish some other legitimate governmental purpose these [ex post facto] doctrines do not apply." *Wis. Bingo Sup. & Equip. Co.,* 88 Wis. 2d at 305. We contin-

703

ued, quoting *De Veau v. Braisted,* 363 U.S. 144, 158–60 (1960):

> 'The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation . . . .' *Wis. Bingo Sup. & Equip. Co.,* 88 Wis. 2d at 305.

Based on the language in those United States Supreme Court cases, we concluded in *Wis. Bingo Sup. & Equip. Co.,* that the petitioner was not being punished. *Id.* Focussing on the regulatory nature of the statute, we found instead that he was simply being denied a license because he did not qualify under the standards set up by the legislature to regulate bingo licenses. *Id.*

The same year as *De Veau* was decided, the Supreme Court, in another case, provided additional means of determining whether a law was meant to punish. In *Flemming v. Nestor,* 363 U.S. 603 (1960), the Court determined whether sec. 202(n) of the Social Security Act which terminated petitioner's old-age benefits after he was deported, violated the Ex Post Facto Clause. Emphasizing that each case turned on its own particularized set of facts, the Court stated:

> In determining whether legislation which bases a disqualification on the happening of a certain past event imposes a punishment, the Court has sought to discern the objects on which the enactment in question was focused. Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the dis-

qualification is not punishment even though it may bear harshly upon one affected. The contrary is the case where the statute in question is evidently aimed at the person or class of persons disqualified. *Id.* at 613–14.

The Court underscored that the petitioner carried a heavy burden in proving that the statute is unconstitutional because of the strong presumption of constitutionality given to statutes: "We observe initially that only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground. Judicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed." *Id.* at 617.

Based upon the fact-specific test cited, the *Flemming* Court concluded that the legislative history of sec. 202(n) was too meager to establish that the statute had been enacted with a punitive intent. *Id.* at 619. The history no more illustrated that the legislation was aimed at the acts of the individuals leading to deportation than it was at the fact of deportation itself. *Id.* at 620. Accordingly, the Court upheld the legislation.

With these cases as a backdrop, we turn to sec. 941.29, Stats., to determine whether it was enacted with the intent to punish convicted felons. We note that, unlike the circuit court, we do not limit the definition of punishment to the range of fines or penalties and incarceration. Although Thiel is not charged with possession of a firearm, the statute is being applied to restrict his activities during probation (and will apply to restrict his activities permanently thereafter unless he receives relief from the statute pursuant to sec. 941.29(5)(a) and (b)). Therefore, we consider the facts

of this case and the legislative aim of the statute to determine whether it was enacted with punitive intent.

Thiel bears a heavy burden: constitutional challenges to a statute must overcome a strong presumption of constitutionality. *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 45–46, 205 N.W.2d 784 (1973). Under the applicable ex post facto jurisprudence, Thiel must prove that the legislature had a punitive intent in enacting sec. 941.29, Stats.

Here, Thiel seems to concede that sec. 941.29, Stats., was enacted in at least some measure to protect public safety. He contends, however, that the legislature attempts to achieve that goal by deterring convicted felons from possessing firearms, and that the goal of deterrence is synonymous with punishment for ex post facto purposes. For support, he draws on this court's view on double jeopardy to assert that punishment should be broadly interpreted. He cites *State v. Killebrew,* 115 Wis. 2d 243, 251, 340 N.W.2d 470 (1983): "[g]overnmental action is punishment under the double jeopardy clause if its principal purpose is punishment, retribution or deterrence." The emphasis in this statement from *Killebrew,* however, is on the word "principal," for we went on in that case to say: "When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment." *Id.*

Even if we were to accept the definition of punishment set forth in double jeopardy cases, we would nevertheless conclude that sec. 941.29, Stats., does not violate the Ex Post Facto Clause. There is no evidence that the principal purpose of sec. 941.29 is punishment, deterrence or retribution. Rather, our examination of sec. 941.29, in its entirety, leads us to conclude that the

706

statute was aimed not at punishment but at protecting public safety through firearm regulation.

The statute's treatment of persons found not guilty of a felony by reason of insanity, mental disease or defect, in sec. 941.29(1)(c), (7)(a), (b), Stats., underscores this conclusion. Like felons, persons found not guilty of a felony by reason of mental disease or defect are prohibited from possessing firearms under sec. 941.29(1)(c). Assuming the aim of the firearm restriction is solely punitive, these provisions are inconsistent with the way mentally disabled criminals are generally treated—with commitment in the hopes of rehabilitation. Assuming instead that the goal of the statute is public safety, the reason for such treatment in sec. 941.29 is clear: for purposes of public safety, mentally disabled or defected persons who are likely to misuse firearms are not entrusted with them. Once it has been determined that persons found not guilty by reason of insanity no longer have a mental disease or defect *and* are not likely to use a firearm in a manner dangerous to public safety, they are exempt from the statutory restrictions. *See* secs. 941.29(7)(a) and (b). These provisions lead us to conclude that the statute is aimed at protecting the public, not at punishing the individual. *See also* secs. 941.29(1)(e) and 941.29(9) (Supp. 1994) (restricting from possessing firearms those involuntarily committed who were ordered not to possess firearms because there is a substantial probability that they may use them in a manner that may endanger the public).

Section 941.29, Stats., was not enacted to punish convicted felons but rather to protect public safety. The restriction on a convicted felon's ability to possess firearms comes about incident to firearm regulation out of

concerns of public safety. We hold, therefore, that sec. 941.29 is not an ex post facto law. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the Court of Appeals is affirmed.