¶ 78.
DAVID T. PROSSER, J.
(concurring). This complicated case presents numerous issues for the court. Some are factual; some are legal. Sorting out these issues is indispensable to understanding this case. Recognizing the multitude of fact situations that will be affected by our decision is critical in explaining the law.
r-H
¶ 79. The petitioner, Aman D. Singh (Singh), has been convicted of multiple offenses. Three of his convictions are pertinent to this case.
f 80. On December 8, 2008, Singh was charged in Waukesha County with five counts of violating Wis. Stat. § 961.43(a), a Class H felony. His offenses were committed in 2008. On March 29, 2010, he pled guilty to Count 1 of the Complaint. He was sentenced on April 29, 2010.
¶ 81. On August 26, 2011, Singh was charged with two additional counts of violating Wis. Stat. § 961.43(a), still Class H felonies, in Milwaukee County. He also was charged with a misdemeanor. The felonies were committed on July 25, 2011, and August 10, 2011. Singh pled guilty to all three charges on November 9, 2011, and he was sentenced on December 29, 2011.
HH 1 — 1
¶ 82. In June 2009 the legislature passed and the governor approved the executive budget for the 2009-11 biennium. Included in the budget were exten *159 sive changes to Wis. Stat. § 302.113, which is entitled "Release to extended supervision for felony offenders not serving life sentences." The changes to § 302.113 did not take effect until October 1, 2009.
¶ 83. Prior to this effective date, the statute required most inmates sentenced to prison to serve the full confinement portion of their sentence. Wis. Stat. § 302.113(2) (2007-08). There were several exceptions to this general rule.
¶ 84. The 2009 legislation made numerous changes in the sentencing law, including changes that permitted certain persons[1] sentenced to prison to earn "positive adjustment time" (PAT) that shortened the period of confinement before these persons were released to extended supervision. See 2009 Wis. Act 28, §§ 2720-2733.[2] Pertinent to this case, Wis. Stat. § 302.113(2) was amended to add paragraph (b), which read, in part,
(b) An inmate sentenced under s. 973.01 for a misdemeanor or for a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)l., may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties. An inmate con *160 victed of a misdemeanor or a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)l., shall be released to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence, as modified by the sentencing court under s. 301.045(3m)(b)l. or 302.05(3)(c)2.a., if applicable, less positive adjustment time he or she has earned.
¶ 85. Section 9311(4) of 2009 Wis. Act 28 provided that Section 302.113(2) of the statutes first applies "to a person sentenced on December 31, 1999." In other words, Wis. Stat. § 302.113(2)(b) applied retroactively to persons sentenced on or after December 31, 1999.
¶ 86. The budget bill contained a sentence stating that § 302.113(2)(b) did not apply prospectively to a "person sentenced on or after the effective date of the subdivision." However, the governor vetoed that sentence.
¶ 87. The 2009 legislation also created Wis. Stat. § 302.113(2)(c), which prescribed the procedures for releasing an inmate to extended supervision after he or she accrued PAT:
302.113(2)(c)l. When an inmate is within 90 days of release to extended supervision under par. (b), the department shall notify the sentencing court that it intends to modify the inmate's sentence and release the inmate to extended supervision under par. (b), and the court may hold a review hearing. If the court does not schedule a review hearing within 30 days after notification under this subsection, the department may proceed under par. (b).
¶ 88. In 2011 the legislature passed 2011 Wis. Act 38, which substantially revised the law with respect to early release to extended supervision. Section *161 38 of the new legislation repealed the PAT provisions in Wis. Stat. § 302.113(2)(b) that were created during the previous legislative session.
¶ 89. Section 39 of the Act also repealed the release procedures specified in Wis. Stat. § 302.113(2)(c) (2009-10). In their place, Section 96 of the Act created Wis. Stat. § 973.198:
973.198 Sentence adjustment; positive adjustment time. (1) When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.11, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and the effective date of this subsection . .. [LRB inserts date], he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.
(3) Within 60 days of receipt of a petition filed under sub. (1), the sentencing court shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision.
(5) If the court determines that the inmate has earned positive adjustment time, the court may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and shall lengthen the term of extended supervision so that the total length of the bifurcated sentence originally imposed does not change.
(6) An inmate who submits a petition under this section may not apply for adjustment of the same sentence under s. 973.195 for a period of one year from the date of the petition.
*162 (Alterations in original.)
¶ 90. New Section 973.198 preserved for an inmate the PAT that had been earned between October 1, 2009 and August 3, 2011, but it prevented the inmate from taking full advantage of what had been earned by delaying the date for the inmate's petition until the date the inmate was eligible for release, which took into account the period of confinement reduced by the PAT earned under the repealed 2009 law.
rH i — I i — I
¶ 91. Evaluation of the changes to the law at issue in this case is grounded in three dates: December 31, 1999; October 1, 2009; and August 3, 2011. To help the reader understand the big picture, the following discussion will refer to four periods of time based on these dates.
¶ 92. First, the "PAT window" refers to the time period beginning October 1, 2009, and ending on August 3, 2011. 2009 Wis. Act 28 made PAT available under Wis. Stat. § 302.113(2)(b) for inmates sentenced for eligible crimes during this time period.
¶ 93. Second, the "retroactivity window" refers to the time period beginning on December 31, 1999, and ending on September 30, 2009 — the day before October 1, 2009. Section 9311(4) of 2009 Wis. Act 28 made PAT available to inmates sentenced for eligible crimes during the retroactivity window.
¶ 94. Third, the period of time before December 31, 1999.
¶ 95. Fourth, the period of time after August 3, 2011, the date 2011 Wis. Act 38 repealed the PAT provisions in Wis. Stat. § 302.113(2)(b).
*163 ¶ 96. Every relevant "event" described below occurs in one of these four time periods. The court must consider the dates of the following events: (1) the date a person committed an eligible offense; (2) the date the person was sentenced for the eligible offense; (3) the date the person's confinement began as part of the person's bifurcated sentence; and (4) the date the person's confinement ended as part of that sentence.
¶ 97. Examining the four time periods in conjunction with the four events reveals 35 categories of persons who might be analyzed for possible ex post facto impact following the 2011 change in the law.[3] The chart in the Appendix lists the 35 categories of persons.
*164 ¶ 98. Thirteen categories on the chart are clearly irrelevant to any ex post facto analysis.
• Categories 1-10 are irrelevant because the legislature never made PAT available to persons sentenced before December 31, 1999, for committing an eligible offense. The 2011 changes in the law had no effect upon persons in these categories.
• Categories 11 and 21 are irrelevant because persons in these categories ended the confinement portion of their sentences before October 1, 2009. These persons ended their confinements before the legislature created PAT and thus never qualified for it.
• Category 35 is irrelevant because the legislature never made PAT available to persons who committed an "eligible" offense after August 3, 2011.
¶ 99. Seven additional categories may be removed from consideration because they involve persons who ended the confinement portion of their sentences before August 3, 2011. Whether sentenced during the retroactivity window, as were persons in categories 12, 14, 22, and 24, or during the PAT window, as were persons in categories 17, 27, and 31, *165 these persons were eligible to accrue PAT during the portions of their confinement that overlapped with the PAT window. Any PAT earned should have been applied to their sentences of confinement to accelerate their release to extended supervision. The 2011 law change had no effect on these persons absent additional facts not stated. Removing these additional 7 categories reduces the number of relevant categories to 15.
¶ 100. The persons in the remaining 15 categories[4] did not end the confinement portion of their prison sentences until after the legislature changed the law in 2011 to end PAT. These persons are entitled to all the PAT, if any, that they earned during the PAT window. That time was preserved by the 2011 legislation.
¶ 101. What is at issue here is whether persons in these 15 categories are entitled to earn PAT after August 3, 2011.
¶ 102. The 2011 statute does not seem to permit any person to earn PAT after August 3, 2011. However, some inmates committed eligible offenses, were sentenced on their offenses, and commenced their confinement within the PAT window. Theoretically, these inmates have the strongest case under the Ex Post Facto Clauses to challenge the termination of their ability to earn PAT after August 3, 2011. It must be remembered, however, that the 2009 legislation treated inmates who were sentenced for eligible offenses during the retroactivity window exactly the same as inmates who committed offenses and were sentenced during the PAT window.
*166 ¶ 103. Consequently, the court must analyze whether categories of persons who either committed eligible offenses or were sentenced for such offenses during the retroactivity window are qualified to make the same ex post facto claims as categories of persons who committed eligible offenses and were sentenced during the PAT window. Once this issue is resolved, the question must be answered whether any categories of persons are entitled, under ex post facto principles, to earn PAT after August 3, 2011.
> I — I
¶ 104. By enacting 2009 Wis. Act 28, the legislature not only prospectively changed the law of sentencing beginning on October 1, 2009, but also changed all sentences imposed during the retroactivity window for eligible inmates who committed eligible crimes. This change to the law had an immediate mitigating effect on confined persons sentenced during the retroactivity window. Although at sentencing these persons anticipated that their confinement would last for the entire term specified by the sentencing court, 2009 Wis. Act 28 gave them the opportunity to earn PAT and thereby reduce the length of their confinement.
¶ 105. Notably, the mitigation of these persons' sentences turned upon the date of sentencing, rather than the date on which they committed the underlying eligible offense. See 2009 Wis. Act 28, § 9311(4) ("[T]he creation of section[] 302.113(2)(b)... of the statutes first applies] to a person sentenced on December 31, 1999."). The legislature extended the mitigating effects of PAT to all qualified persons sentenced on or after December 31, 1999 — regardless of whether they committed an eligible offense before or after that date. Furthermore, a person who committed an eligible *167 offense during the retroactivity window might nevertheless have gained access to PAT if he or she received a sentence during the PAT window.
¶ 106. After October 1, 2009, a person sentenced for an eligible offense during the retroactivity window had an expectation of PAT access identical to that of a person sentenced during the PAT window. Because 2011 Wis. Act 38 eliminated the opportunity to continue earning PAT for persons sentenced during the retroactivity window and persons sentenced during the PAT window, both groups experienced the same increase in the term of confinement. Accordingly, we can analyze both groups together when determining whether the repeal of PAT after August 3, 2011, violated the constitutional prohibitions on ex post facto laws.
V
¶ 107. Under the United States Constitution, "No State shall. . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts ..." U.S. Const. art. I, § 10, cl. 1. Wisconsin's Constitution provides: "No bill of attainder, ex post facto law, nor any law impairing the obligations of contracts, shall ever be passed . . . ." Wis. Const. art. I, § 12. "We have long looked to the pronouncements of the United States Supreme Court in construing the Ex Post Facto Clause of the Federal Constitution as a guide to construing the Ex Post Facto Clause of the Wisconsin Constitution." State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994) (footnote omitted).
¶ 108. The Supreme Court of the United States conducted an extensive review of its own Ex Post Facto Clause jurisprudence in Collins v. Youngblood, 497 *168 U.S. 37 (1990). In an opinion by Chief Justice Rehnquist, the Court began with language from Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798), in which Justice Samuel Chase "expounded those legislative Acts which in his view implicated the core concern of the Ex Post Facto Clause." Collins, 497 U.S. at 41-42.
¶ 109. Justice Chase described four types of laws that he understood to contravene the constitutional prohibition:
I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.
Calder, 3 U.S. (3 Dall.) at 390 (opinion of Chase, J.) (emphasis omitted).
¶ 110. Characterizing the language from Justice Chase's Calder opinion as a comprehensive explanation of ex post facto laws, the Supreme Court in Collins emphasized a twentieth century formulation of the definition from Beazell v. Ohio, 269 U.S. 167 (1925):
It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged *169 with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.
Collins, 497 U.S. at 42 (quoting Beazell, 269 U.S. at 169-70).
¶ 111. After the Supreme Court decided Collins, this court reviewed Wisconsin's ex post facto jurisprudence in State v. Thiel, 188 Wis. 2d 695, 524 N.W.2d 641 (1994). In that case, this court acknowledged that "Collins underscored that the proper definition of an ex post facto law is the definition originally stated in Colder and later summarized in Beazell." Thiel, 188 Wis. 2d at 702.
¶ 112. Two of my colleagues have written at length regarding Singh's first eligible offense, which he committed during the retroactivity window and for which he was sentenced during the PAT window. They argue that, when determining whether a subsequent act of the legislature is unconstitutional, ex post facto analysis should look solely to the law as it was at the time of the commission of the offense. Chief Justice Roggensack's dissent, ¶ 217 ("Because the August 3, 2011 repeal of PAT caused the law to be as it was in 2008 when Singh committed the first of his crimes, the 2011 legislation did not impose punishment that was greater than it was at the time Singh committed the first of his crimes."); Justice Rebecca G. Bradley's dissent, ¶ 234 ("The 2011 law does not increase Singh's sentence attached to the 2008 crime because it makes no change to the punishment that existed at the time Singh committed the 2008 crime.").[5]
*170 ¶ 113. I am not persuaded that ex post facto analysis is always limited to mere comparison of the law as it existed at two discrete times. To say that the 2011 legislation repealing PAT is not an unconstitutional ex post facto law because the punishment in 2011 is the same as the punishment in 2008 fails to acknowledge the objective evolution of the law in the interim period.
¶ 114. In Wisconsin, "No law repealed by a subsequent act of the legislature is revived or affected by the repeal of such repealing act." Wis. Stat. § 990.03(1) (2013-14); see also Goodno v. City of Oshkosh, 31 Wis. 127, 130 (1872) ("The original section, as an independent and distinct statutory enactment, ceased to have *171 any existence the very moment the amendatory act was passed and went into effect.... The original section, as a separate statute, was as effectually repealed and obliterated from the statute book, as if the repeal had been made by direct and express words . . . .")•
¶ 115. The 2011 legislation repealing PAT did not "reinstate" the statutory scheme for punishment as it existed before October 1, 2009. Rather, in 2011 the legislature amended the punishment scheme for the second time in as many legislative sessions. An appropriate analysis requires review of the ex post facto consequences of the change in the law in 2009, followed by review of the further changes to the law in 2011. Comparing the punishment for eligible crimes in 2011 to the punishment for the same crimes in 2008 is not sufficient where 2009 Wis. Act 28 retroactively altered the law as it existed in 2008.
¶ 116. Clearly, the retroactive creation of PAT in 2009 was not unconstitutional. "Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,1 it has long been recognized . . . that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." Collins, 497 U.S. at 41; see also Dobbert v. Florida, 432 U.S. 282, 294 (1977) ("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law."). Consequently, 2009 Wis. Act 28 did not violate the prohibitions on ex post facto laws by retroactively reducing the confinement period of some sentences imposed during the retroac-tivity window.
¶ 117. Resolving whether the 2011 legislation repealing PAT constituted an unconstitutional ex post facto law, however, requires a more careful review. *172 Before proceeding to an analysis of whether eliminating the opportunity to earn PAT after it had been granted actually makes the punishment for eligible offenses more burdensome, it is necessary to determine who may claim an ex post facto violation in this case.
¶ 118. As stated already, see supra Part IV, the repeal of PAT had an identical effect on persons sentenced during the retroactivity window and persons sentenced during the PAT window by depriving both groups of the opportunity to earn PAT after August 3, 2011. In effect, the legislature created a statutory entitlement to PAT mitigating confinement for any person sentenced for an eligible offense during the retroactivity window or the PAT window. See Garner v. Jones, 529 U.S. 244, 258 (2000) (Scalia, J., concurring) ("A statutory parole system that reduces a prisoner's sentence by fixed amounts of time for good behavior during incarceration can realistically be viewed as an entitlement — a reduction of the prescribed penalty— rather than a discretionary grant of leniency.").
¶ 119. Because the legislature in 2009 created that entitlement to a sentence with confinement mitigated by PAT for persons sentenced during either the retroactivity window or the PAT window, the 2011 legislation withdrew a continued opportunity to earn PAT from both groups. A change in the law that "makes more onerous the punishment for crimes committed before its enactment. . . runs afoul of the prohibition against ex post facto laws." Weaver v. Graham, 450 U.S. 24, 35-36 (1981). Eliminating access to PAT after August 3, 2011, for persons sentenced during the retroactivity window and the PAT window risked making the punishment more burdensome: where they previously had an opportunity to mitigate their term of *173 confinement, the 2011 legislation guaranteed that many of those inmates would be required to serve a longer period of confinement than they would have had the law not been changed.
¶ 120. Though people sentenced during the ret-roactivity window and PAT window did not necessarily contemplate PAT at the time they committed eligible crimes, the legislature in 2009 saw fit to mitigate— retroactively or prospectively — all of their sentences when it created PAT. To say that ex post facto analysis is inappropriate because the law changed only after people were sentenced is to deny the plain fact that the 2011 legislative action risked making more severe the term of confinement for persons already in prison.[6] Accordingly, it is appropriate to consider persons sentenced during the retroactivity window and the PAT window alongside persons who committed eligible offenses during the PAT window when deciding whether the repeal of PAT was an unconstitutional ex post facto law.
*174 ¶ 121. Under the Beazell formulation of the definition of ex post facto laws — embraced by the Supreme Court in Collins and adopted by this court in Thiel— the repeal of PAT in 2011 allegedly "makes more burdensome the punishment for a crime, after its commission." Thiel, 188 Wis. 2d at 700 (quoting Collins, 497 U.S. at 42). In cases where a change in the law is alleged to make the punishment for a crime more burdensome after commission of the offense, "[t]he touchstone of [a court's] inquiry is whether a given change in law presents a ' "sufficient risk of increasing the measure of punishment attached to the covered crimes." Peugh v. United States, 133 S. Ct. 2072, 2082 (2013) (quoting Garner, 529 U.S. at 250, which had quoted Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). "[M]ere speculation or conjecture that a change in law will retrospectively increase the punishment for a crime will not suffice to establish a violation of the Ex Post Facto Clause," but neither must "a law increase the maximum sentence for which a defendant is eligible in order to violate the Ex Post Facto Clause." Id. at 2081-82.
¶ 122. Here, the repeal of PAT ensured that many persons convicted of eligible offenses would actually serve a longer term of confinement than the mitigated term available by law when they committed the offense or were sentenced for it. Admittedly, a person confined to prison for an eligible offense may engage in behavior that precludes accrual of much, or any, PAT. But that possibility in some cases does not change the fact that the 2011 legislation eliminated PAT's mitigating effect for all eligible persons with eligible sentences who served all or part of their prison sentence after August 3, 2011.
*175 ¶ 123. The Supreme Court has identified as unconstitutionally ex post facto various laws that "had the purpose and effect of enhancing the range of available prison terms." Morales, 514 U.S. at 507 (first citing Lindsey v. Washington, 301 U.S. 397 (1937); then citing Weaver, 450 U.S. 24; and then citing Miller v. Florida, 482 U.S. at 433-34). The cases discussed in Morales involved unconstitutional laws that amended state sentencing guidelines that were "intended to, and did, increase the 'quantum of punishment' " for crimes in the category at issue, Miller, 482 U.S. at 433-34; reduced "gain-time accumulation" so as to "lengthen [] the period that someone . . . must spend in prison," Weaver, 450 U.S. at 33 (overturning Florida statute reducing the number of gain-time days an inmate could earn each month); and "ma[de] mandatory what was before only the maximum sentence," Lindsey, 301 U.S. at 400. See also Peugh, 133 S. Ct. at 2084 ("A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation."); Lynce v. Mathis, 519 U.S. 433, 443 (1997) (explaining that in "post-Weacer cases, [the Court has] . . . considered whether the legislature's action lengthened the sentence without examining the purposes behind the original sentencing scheme," and noting that in Miller, the Court's conclusion that the sentencing guidelines made the punishment more burdensome "rested entirely on an objective appraisal of the impact of the change on the length of the offender's presumptive sentence").
¶ 124. Cases involving an objective increase in sentence length stand in contrast to those in which the Court concluded that laws permitting discretionary decisions did not have an unconstitutional ex post facto *176 effect. See Garner, 529 U.S. at 256 (declining to conclude that "change in Georgia law lengthened [an inmate's] time of actual imprisonment" where state parole board exercised its discretion to increase time period between parole hearings); Morales, 514 U.S. at 505-07 (concluding that law permitting parole board to schedule subsequent parole hearings two years in the future rather than annually after initial hearing did not unconstitutionally change "the substantive formula for securing any reductions to [the] . . . sentencing range").
¶ 125. The repeal of PAT by 2011 Wis. Act 38 hews much closer to the cases involving lengthening of prison terms than to those involving discretionary parole decisions. Even though PAT is contingent on inmate conduct during the term of confinement— meaning that an eligible inmate does not receive PAT as a matter of right without appropriate conduct — the 2011 legislation had the effect of preventing accrual of PAT for perfect behavior after August 3, 2011.
¶ 126. As a result, eligible persons who were sentenced for eligible offenses during the retroactivity window, eligible persons who were sentenced for eligible offenses during the PAT window, and eligible persons who committed eligible offenses during the PAT window had their imposed or expected sentences transformed. Where they could once expect a term of confinement as mitigated by PAT earned during the entirety of confinement, they could now expect a term of confinement as mitigated by PAT (if any) earned only during the PAT window. For an eligible person who began confinement close in time to August 3, 2011, such a change in the law could mean years added to the *177 length of time he or she could expect to spend in prison, assuming behavior conforming to the standards necessary to earn PAT.
¶ 127. In 2011 the legislature repealed PAT prospectively not just for persons who committed offenses after August 3, 2011, but also for persons already eligible to earn PAT based on the dates they committed or were sentenced for eligible offenses. For persons sentenced during the retroactivity window, persons sentenced during the PAT window, and persons who committed offenses during the PAT window, a prohibition on earning PAT after August 3, 2011, creates an obvious and "sufficient" risk that they will serve longer sentences than they would have had PAT not been repealed. Therefore, I would hold that 2009 Wis. Act 38 was an unconstitutional ex post facto law to the extent that it denied those persons the opportunity to earn PAT during confinement after August 3, 2011.[7]
VI
¶ 128. I agree with the lead opinion's conclusion that the amended release procedure in Wis. Stat. § 973.198 created by 2011 Wis. Act 38 is an unconstitutional ex post facto law because it may lengthen the term of confinement for inmates who have earned PAT by as many as 90 days. Lead op., ¶ 68. I write separately to emphasize that the amendment to the release procedure for earned PAT clearly results in an ex post facto violation.
¶ 129. It is important to observe that the amended release procedure necessarily requires more time in confinement for a person who has earned PAT *178 than did the previous procedure. The procedure created in 2009 required the Department of Corrections to notify the sentencing court "within 90 days of release to extended supervision" of an intent to modify a sentence and release a person early because of earned PAT. Wis. Stat. § 302.113(2)(c)1. (2009-10). Thus, a person could complete the review process before the date of eligibility for release and conceivably begin extended supervision on that date.
¶ 130. The revised procedure created by 2011 Wis. Act 38 makes it impossible for an inmate who has earned PAT to begin extended supervision on the date that PAT makes that person eligible for release from confinement. Under the new procedure, "[w]hen an inmate. . . who has earned positive adjustment time . . . has served the confinement portion of his or her sentence less positive adjustment time ... , he or she may petition the sentencing court to adjust the sentence." Wis. Stat. § 973.198(1) (2013-14). The sentencing court must hold a hearing on the petition within 60 days of receiving it, and the sentencing court then "may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days." Wis. Stat. § 973.198(3)-(5).
¶ 131. In effect, the result of this change is to reduce by as many as 90 days the amount of PAT that an inmate has earned. An inmate under the new system may not petition for release until the date that the old system would have permitted release. As revised, the release procedure essentially eliminates at least 1 and as many as 90 days of earned PAT.
¶ 132. Characterizing this change to the release process as "procedural" rather than "substantive" does not save it for constitutional purposes. Although *179 the Supreme Court stated in Dobbert v. Florida, 432 U.S. 282 (1977), that "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto," the Court went on to explain that the law at issue in the case was "procedural" because "[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." Dobbert, 432 U.S. at 293-94. The legislature has the prerogative to alter the procedure for exercising earned PAT, but we must evaluate whether any changes have a substantive impact on the length of punishment.
¶ 133. It has already been established that an ex post facto violation occurs when a law retroactively extends the amount of time that a person must spend in prison. "By definition,. . . reduction in gain-time accumulation lengthens the period that someone . . . must spend in prison." Weaver, 450 U.S. at 33. Because the new release procedure eliminates anywhere from 1 to 90 days of earned PAT, the procedure undoubtedly lengthens the term of confinement and therefore also has an unconstitutional effect.
VII
¶ 134. To conclude, I return to Singh and review the consequences for him of the law discussed thus far.
¶ 135. At the outset, I conclude that Singh is not eligible to earn PAT on the offense committed on August 10, 2011. Because that offense was committed after the repeal of PAT on August 3, 2011, Singh has no basis to claim (and does not assert) that he is eligible for PAT on this offense.
¶ 136. Next, I conclude that Singh is eligible for PAT on the offense committed on July 25, 2011. Be *180 cause he committed that offense during the PAT window, denying him PAT would unconstitutionally lengthen the term of his confinement. He is eligible to earn PAT during any time confined in prison under sentence for that offense — including any time confined after August 3, 2011.
¶ 137. Finally, I conclude that Singh is eligible for PAT on the 2008 Waukesha County offense. Because he was sentenced during the PAT window, denying him PAT would unconstitutionally lengthen the term of his confinement. He is eligible to earn PAT during any time confined in prison under that sentence —including any time confined after August 3, 2011.
¶ 138. To be clear, Singh has not asked this court to precisely determine how much PAT, if any, he earned while confined under these sentences. As Singh explains in his brief in response to Warden Kemper's cross-petition, "It would be trivial for this Court to assess the specific positive-adjustment-time calculations to which Mr. Singh was entitled. That is particularly so given Mr. Singh's circumstances — his other sentence, and his current status of having been released from prison." Indeed, given the complex factual circumstances relating to these sentences and Singh's time in and out of confinement during the time periods at issue, there is a distinct possibility that any PAT he earned would not have resulted in his earlier release.
1 139. For the foregoing reasons, I respectfully concur. I agree with many of the conclusions and much of the reasoning in the lead opinion. I would affirm the decision of the court of appeals regarding Singh's eligibility for PAT and reverse the decision of the court of appeals regarding the procedure for securing release pursuant to earned PAT.
*181 [[Image here]]

 Wisconsin Stat. § 973.01(3d)(b) (2009-10) made PAT unavailable to persons determined by the DOC to "posed high risk of reoffending."

 For additional context regarding recent amendments to Wisconsin's sentencing laws, see Cecelia Klingele, The Early Demise of Early Release, 114 W. Va. L. Rev. 415, 436-39 (2012); Jesse J. Norris, The Earned Release Revolution: Early Assessments and State-Level Strategies, 95 Marq. L. Rev. 1551, 1566 (2012); Michael O'Hear, Good Conduct Time for Prisoners: Why (and How) Wisconsin Should Provide Credits Toward Early Release, 98 Marq. L. Rev. 487, 504-07 (2014).

 Calculating the total number of combinations of dates and events is a question of mathematics. The product rule is a fundamental mathematical principle: "[S]uppose that Ais a set of a objects and B is a set of b objects. Then the number of ways to pick one object from A and then one object from B is a X b." Fred S. Roberts & Barry Tesman, Applied Combinatorics 17 (2d ed. 2009) (emphasis omitted). For example, a guest attending a wedding might have two choices of appetizer (soup or salad) and three choices of main course (beef, chicken, or vegetarian). To determine the total number of combinations of appetizers and main courses available to each guest, multiply the number of appetizers (2) times the number of main courses (3) for a total of 6 possible combinations of appetizers and main courses.
Applying the product rule to the dates and events under review in this case returns 256 different combinations of relevant events and time periods. A person convicted of an eligible offense may have committed the offense during any of the four time periods, been sentenced for the offense during any of the four time periods, begun serving the confinement portion of a sentence during any of the four time periods, and ended the confinement portion of the sentence during any of the four time periods. This means that a person could have committed an eligible crime before December 31, 1999, during the retroactivity window, during the PAT window, or after *164 August 3, 2011. Because we consider four time periods for each relevant event, we multiply 4x4x4x4to return 256 combinations of events and time periods.
Fortunately, the laws of physics render impossible most of the 256 combinations of time periods and events. As one example, it is impossible for a person who committed an eligible offense after August 3, 2011, to end the confinement portion of the sentence for that offense before December 31, 1999. Removing temporally impossible combinations leaves 35 remaining categories of persons.

 To be clear, the remaining 15 categories are 13, 15, 16, 18, 19, 20, 23, 25, 26, 28, 29, 30, 32, 33, and 34.

 The exclusive use of the date on which a person committed an eligible offense carries with it a concerning implication: the legislature could have entirely eliminated PAT earned by *170 certain inmates during the PAT window. As Justice Rebecca Bradley sets forth the argument,
At the time Singh committed the 2008 crime, the PAT opportunity did not exist; therefore, 2011 Wis. Act 38's repeal of it does not implicate any ex post facto concerns regarding the 2008 crime. The 2011 law does not increase Singh's sentence attached to the 2008 crime because it makes no change to the punishment that existed at the time Singh committed the 2008 crime.
Justice Rebecca G. Bradley's dissent, ¶ 234 (footnote omitted).
Consider a person who committed and was sentenced for an eligible offense before October 1, 2009, served the confinement portion of a prison sentence during the entire PAT window, and continued that confinement after August 3, 2011. If ex post facto analysis is limited to a strict focus on the date of commission of the offense, then the legislature could have eliminated all PAT earned by that person during the PAT window without implicating ex post facto concerns because eliminating the earned PAT would "make[] no change to the punishment that existed" when the crime was committed before October 1, 2009. Under such an analysis, the 2011 repeal of PAT would seem to survive constitutional scrutiny for ex post fact purposes even without the reasonable preservation of earned PAT set forth in Wis. Stat. § 973.198 (2013-14).

 Chief Justice Roggensack argues that the lead opinion "employs a new definition of ex post facto law when it changes the act from which ex post facto effect is measured to include a temporary change in a law that was repealed subsequent to conviction and sentencing." Chief Justice Roggensack's dissent, ¶ 214. She contends that "[n]o United States Supreme Court opinion supports the lead opinion's definition of ex post facto law, nor does any opinion from this court." Id,., ¶ 215. But it bears noting that changes in the law after sentencing also occur after commission of the crime. The Ex Post Facto Clauses prohibit legislative action that "makes more burdensome the punishment for a crime, after its commission." State v. Thiel, 188 Wis. 2d 695, 700, 524 N.W.2d 641 (1994) (quoting Collins v. Youngblood, 497 U.S. 37, 42 (1990)). It undermines the prohibition's purpose if the legislature may increase the term of confinement for prisoners after their confinement has begun.

 By the reasoning stated in this opinion, I thus reach the same conclusion as the lead opinion. Lead op., ¶ 47-48.