¶ 1.
ANN WALSH BRADLEY, J.
We are presented with both a petition and a cross-petition for review involving the constitutionality of legislation that repealed and modified a law, 2009 Wis. Act 28, that allowed inmates the opportunity to earn "positive adjustment time," by which inmates could obtain early release from prison.[1]
*132 ¶ 2. The constitutionality of two provisions of 2011 Wis. Act 38 relating to 2009 Wis. Act 28, which adopted positive adjustment time, are at issue in this case: (1) the retroactive repeal of positive adjustment time, and (2) the preservation of positive adjustment time earned while 2009 Wis. Act 28 was in effect and alterations to the process for obtaining early release based on positive adjustment time, which we refer to as Wis. Stat. § 973.198.
¶ 3. The petitioner, Aman Singh, seeks review of a published court of appeals decision that reversed in part and affirmed in part the circuit court's order dismissing his petition for writ of habeas corpus.[2] Singh contends that Wis. Stat. § 973.198 delays inmates' release from prison by up to 90 days, thereby violating the ex post facto clauses of the Wisconsin and United States Constitutions.[3]
¶ 4. He argues that under Wis. Stat. § 973.198, inmates who are eligible for positive adjustment time are released up to 90 days later than under 2009 Wis. *133 Act 28. Asserting that this change results in a longer period of incarceration, Singh claims that § 973.198 violates the ex post facto clauses. We agree with Singh that Wis. Stat. § 973.198 violates the constitutional prohibition against ex post facto laws because it results in a longer period of incarceration, thus making the punishment for an offense more burdensome after it was committed.[4]
¶ 5. Cross-petitioner, Paul Kemper, in his capacity as warden of the Racine Correctional Institute, seeks review of that part of the court of appeals' decision that reversed the circuit court's order dismissing Singh's petition for writ of habeas corpus. He asserts that because Singh committed one of his crimes before the enactment of positive adjustment time in 2009 Wis. Act 28, the court of appeals erroneously concluded that the retroactive application of 2011 Wis. Act 38, which eliminated the opportunity for inmates to continue earning positive adjustment time, was an ex post facto violation of the Wisconsin and United States Constitutions.
¶ 6. This case presents the unusual circumstance of a defendant who was convicted and sentenced under 2009 Wis. Act 28, which made positive adjustment time available when it was not originally available at the time of the offense. Kemper argues that the court of appeals erred because it focused on changes in the law when the defendant was convicted and sentenced, rather than changes in the law at the time the defendant committed the offenses.
¶ 7. We disagree with Kemper because in this case, due to the retroactive application of positive *134 adjustment time, Singh was convicted and sentenced while 2009 Wis. Act 28 was in effect. Both Wisconsin and United States Supreme Court precedent supports assessing the ex post facto effect of a law in reference to the time the defendant committed the offense, was convicted, or was sentenced.
¶ 8. Like the court of appeals, we conclude that because the early release provisions of 2009 Wis. Act 28 were retroactively in effect when Singh was convicted and sentenced for the first offense, as well as at the time he committed the second offense, that the retroactive repeal of positive adjustment time in 2011 Wis. Act 38 violates the ex post facto clauses of the Wisconsin and United States Constitutions. However, unlike the court of appeals, we conclude that Wis. Stat. § 973.198 also violates the constitutional prohibition against ex post facto laws because it makes the punishment for an offense more burdensome after it was committed.
¶ 9. Accordingly, we affirm the court of appeals' determination that the retroactive repeal of positive adjustment time is an ex post facto violation, but reverse its determination that Wis. Stat. § 973.198 does not violate the constitutional prohibition against ex post facto laws. Additionally, I would remand the cause to the circuit court for a determination of whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted.
H
¶ 10. The relevant facts of this case as presented by the parties are not in dispute. They involve two legislative changes made by 2011 Wis. Act 38. One *135 retroactively repealed positive adjustment time. The other created Wis. Stat. § 973.198, a new statute that preserved the opportunity of early release for certain individuals and altered the procedure for obtaining early release based on positive adjustment time.
| 11. During the time period when Singh was first charged in 2008 until he began serving his prison sentence in early 2012, the Legislature enacted and then repealed 2009 Wis. Act 28, which provided inmates with the opportunity to earn early release from prison.
¶ 12. Enacted in 2009, Wis. Stat. § 302.113(2)(b) (2009-10), provided inmates convicted of Class F to I felonies the opportunity to earn one day of positive adjustment time for every two days of confinement.[5] Positive adjustment time was earned for every two *136 days that the inmate did not violate any regulation of the prison or refuse or neglect to perform required or assigned duties.
¶ 13. Wisconsin Stat. § 302.113(2)(b) (2009-10) provided in relevant part:
An inmate sentenced under s. 973.01 for a misdemeanor or for a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)l., may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties.
¶ 14. In 2011 the Legislature passed 2011 Wis. Act 38 as part of a budget bill, which repealed the early release provisions in 2009 Wis. Act 28. Consequently, after August 3, 2011, prisoners were generally precluded from earning positive adjustment time.
¶ 15. The 2011 Act also created Wis. Stat. § 973.198, which preserved the opportunity for certain individuals to earn early release based on positive adjustment time earned between October 1, 2009 and August 3, 2011, but altered the procedures for procuring early release. Section 973.198 provides in relevant part:
(1) When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.113, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and August 3, 2011, he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.
*137 (3) Within 60 days of receipt of a petition filed under sub. (1), the sentencing court shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision.
(5) If the court determines that the inmate has earned positive adjustment time, the court may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days, and shall lengthen the term of extended supervision so that the total length of the bifurcated sentence originally imposed does not change.
¶ 16. Under the Wis. Stat. § 973.198, inmates are not permitted to file a petition requesting early release until the day that they are actually eligible for release. Filing a petition under § 973.198 starts a process for early release that can take up to 90 days, even though the inmate is eligible for release on the day he files the petition.
¶ 17. In contrast, under the repealed 2009 Act, 90 days before an inmate was eligible for release the DOC was required to notify the sentencing court that it intended to modify the inmate's sentence and release the inmate to extended supervision. Wisconsin Stat. § 302.113(2)(c)l. (2009-10) provided:
When an inmate is within 90 days of release to extended supervision under par. (b), the department shall notify the sentencing court that it intends to modify the inmate's sentence and release the inmate to extended supervision under par. (b), and the court may hold a review hearing. If the court does not schedule a review hearing within 30 days after notification under this subsection, the department may proceed under par. (b).
*138 ¶ 18. Under the 2009 Wis. Act 28, sentencing court had the discretion to hold a hearing within 30 days after it received notice from the DOC. Wis. Stat. § 302.113(2)(c)l. If the sentencing court opted to conduct a review, it was required to hold the hearing and issue an order relating to the inmate's early release within 60 days of receiving the DOC's notice. Section 302.113(c)2.a. In contrast to the current law, an inmate could then be released on the first day he was eligible.
¶ 19. Singh's case arose in the midst of rapid legislative changes to the laws governing inmates' ability to earn early release from prison based on positive adjustment time. In 2008, Singh was charged with obtaining a controlled substance by fraud in violation of Wis. Stat. § 961.43(l)(a).[6] He was convicted and sentenced in 2010 to three years of probation, with a three-year bifurcated sentence imposed and stayed. Singh's sentence included six months of jail time as a condition of probation.[7]
¶ 20. In July of 2011, Singh committed another violation of Wis. Stat. § 961.43(l)(a). After the second *139 offense, Singh's probation for his first offense was revoked. He received a five-year bifurcated sentence for the second offence, to be served consecutively to his first sentence.
¶ 21. In 2012, Singh filed a petition for positive adjustment time pursuant to Wis. Stat. § 973.198. The Department of Corrections (DOC) denied Singh's request for early release because he did not serve any time in prison between October 1, 2009 and August 3, 2011.
¶ 22. After the DOC denied Singh's petition for positive adjustment time, he filed a petition for writ of habeas corpus with the circuit court. The circuit court entered an order quashing the writ and dismissing Singh's petition with prejudice.
¶ 23. On appeal, Singh argued that the retroactive repeal of positive adjustment time and the enactment of Wis. Stat. § 973.198 were ex post facto laws. The court of appeals concluded that the retroactive repeal of positive adjustment time was unconstitutional, but that § 973.198 was not an ex post facto law.
¶ 24. Singh filed a petition for review on the issue of whether Wis. Stat. § 973.198 was an ex post facto law.[8] Kemper cross-petitioned on the issue of *140 whether 2011 Wis. Act 38's retroactive repeal of 2009 Wis. Act. 28's positive adjustment time was an ex post facto law.
II
¶ 25. A circuit court's order denying a petition for writ of habeas corpus presents a mixed question of fact and law. State v. Pozo, 2002 WI App 279, ¶ 6, 258 Wis. 2d 796, 654 N.W.2d 12. We will not reverse the circuit court's findings of fact unless they are clearly erroneous. Id. Whether a writ of habeas corpus is available to the party seeking relief is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. Id.
¶ 26. Similarly, whether a statute violates the ex post facto clauses of the Wisconsin and United States Constitutions is a question of law that this Court *141 reviews independently of the determinations of the circuit court and the court of appeals. State v. Elward, 2015 WI App 51, ¶ 5, 363 Wis. 2d 628, 866 N.W.2d 756. There is a strong presumption that legislative enactments are constitutional. Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶ 76, 350 Wis. 2d 554, 835 N.W.2d 160. Singh has the burden of establishing beyond a reasonable doubt that the challenged legislation is unconstitutional. Chappy v. LIRC, 136 Wis. 2d 172, 184-85, 401 N.W.2d 568 (1987).
III
¶ 27. We address first the issue raised by Kem-per's cross-petition because it is foundational to our discussion of the issue Singh raised in his petition for review. Before we can decide Singh's claim that Wis. Stat. § 973.198 delays early release by up to 90 days, we must first decide whether he was eligible for early release under 2009 Wis. Act. 28.
¶ 28. In Collins v. Youngblood, 497 U.S. 37, 42 (1990), the United State Supreme Court explained that any statute that makes the punishment for a crime more burdensome after it is committed is prohibited as an ex post facto law. This court explicitly adopted the standard set forth in Collins, concluding that:
[A]n ex post facto law, prohibited by the Wisconsin Constitution, is any law: 'which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time the act was committed . . ..'
*142 State v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 (1994) (quoting Collins, 497 U.S. at 42).
¶ 29. Kemper asserts that the court of appeals erred when it determined that a law violates the ex post facto clauses if it imposes a greater punishment than the law in effect at the time an inmate was convicted and sentenced for an offense. See State ex rel. Singh v. Kemper, 2014 WI App 43, ¶ 10, 353 Wis. 2d 520, 846 N.W.2d 820. He argues that the repeal of 2009 Wis. Act 28 cannot be an ex post facto violation as applied to Singh's 2008 offense because it did not increase the punishment beyond what it was at the time of the 2008 offense.
¶ 30. Relying on State v. Kurzawa, 180 Wis. 2d 502, 511, 509 N.W.2d 712 (1994), Kemper advances that one of the fundamental aspects of ex post facto analysis is its focus on changes in the law relative to the time of the defendant's allegedly illegal behavior. He concludes that Singh was not eligible for early release because Singh committed the 2008 offense prior to the enactment of 2009 Wis. Act. 28.
¶ 31. We are not persuaded by Kemper's argument that the court of appeals erred in determining that an ex post facto law increases the punishment imposed at the time of conviction and sentencing, as well as at the time it was committed. Rather, we agree with the court of appeals that an ex post facto law increased the punishment imposed after an offense has been committed. In determining whether such a change in punishment occurred here, we must examine how the progression of Singh's criminal cases fit within the timeline of rapid changes in the law governing early release from prison.
*143 ¶ 32. Although 2009 Wis. Act 28 was not in effect when Singh committed his first offense in 2008, it was enacted to apply retroactively. 2009 Wis. Act 28, §§ 2722, 9311. Pursuant to 2009 Wis. Act 28, inmates sentenced on or after December 31, 1999 could begin earning positive adjustment time staring on October 1, 2009. At the time Singh was sentenced in 2010 for the offense he committed in 2008, 2009 Wis. Act. 28 was in effect.
¶ 33. Subsequently, the Legislature passed 2011 Wis. Act 38, which repealed and modified the early release provisions in 2009 Wis. Act 28. Under 2011 Wis. Act 38, prisoners were precluded from earning positive adjustment time after August 3, 2011. When Singh committed his second offense on July 25, 2011, 2009 Wis. Act 28 was still in place. By the time he was convicted and sentenced later that year, as well as when he began to serve his sentence in prison in 2012, the 2009 Act had been repealed.
¶ 34. Singh's case is complicated by the fact that he did not serve time in prison prior to the 2011 repeal of 2009 Wis. Act. 28. After his first offense in 2008, Singh was convicted and sentenced to three years of probation, with six months of jail time as a condition of probation. It was not until Singh's second offense in 2011 that his probation for the first offence was revoked. Later, he received a five-year bifurcated sentence for the second offense to be served consecutively with his first sentence. Singh's first day in prison was January 4, 2012.
¶ 35. The court of appeals determined that "[w]hen Singh committed or was convicted and sentenced on his offenses, the 2009 act and its multiple early release opportunities were the law." Singh, 353 Wis. 2d 520, ¶ 19 (emphasis added). It concluded that *144 eliminating Singh's eligibility for early release ensured that he would serve his full sentence in prison, resulting in a significant risk that he would serve more confinement time than under 2009 Wis. Act 28. Id. "The ex post facto clauses prohibit this." Id.
¶ 36. We recognize that ordinarily an inmate will be convicted and sentenced under the law that was in effect at the time the offense was committed. In this case, however, Kemper's focus on the timeframe for when an ex post facto violation may occur is too narrow because 2009 Wis. Act 28 applied retroactively to inmates sentenced on or after December 31, 1999. At the time Singh committed the 2008 offense the sentencing structure for a Class H felony did not offer the opportunity to earn positive adjustment time. However, the retroactive application of positive adjustment time means that 2009 Wis. Act 28 applied at the time Singh was convicted and sentenced.
¶ 37. Even if for the sake of argument we accept Kemper's focus on changes in the law at the time the defendant committed the offense, he is incorrect that Singh was not eligible for early release. Although Singh committed his first offense in 2008, prior to the enactment of 2009 Wis. Act 28, he committed his second offense on July 25, 2011. At the time that Singh committed his second offense, the early release provisions of2009 Wis. Act 28 were in place. After his second offense, Singh's probation for his first offense was revoked and he served his sentences for both offenses consecutively. Thus, Singh was entitled to earn positive adjustment time for the time he served in prison as a result of the offense he committed on July 25, 2011.
*145 ¶ 38. Kemper does not dispute that the retroactive repeal of early release would violate the ex post facto clauses if Singh had been eligible for positive adjustment time. Instead, he asserts that Singh was never eligible for early release based upon positive adjustment time because Singh committed his crime before the enactment of 2009 Wis. Act 28. However, both Wisconsin and United States Supreme Court precedent prohibiting ex post facto laws support including the time an inmate is convicted and sentenced.
¶ 39. The animating principle underlying the ex post facto clauses is the concept of fair warning. Kurzawa, 180 Wis. 2d at 513 (quoting Marks v. United States, 430 U.S. 188, 191-92 (1977)). As the United States Supreme Court explained, "[t]hrough [the ex post facto] prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29 (1981).
¶ 40. Kemper seems to believe that the repeal of a mitigating law that was in place when Singh was sentenced will simply put Singh in the position that he would have been in at the time he committed the crime. However, we cannot ignore the fact that Singh relied on 2009 Wis. Act 28 as the law at the time of his plea and sentencing.
¶ 41. In Weaver, the United States Supreme Court considered whether the retroactive application of a revised "gain-time" provision was an ex post facto law. 450 U.S. at 31. The Weaver court explained that "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of *146 the sentence to be imposed." Id. at 32. Accordingly, Weaver concluded that for prisoners who committed crimes before the statute was enacted, it substantially altered the consequences attached to a crime already completed and therefore "change[d] the quantum of punishment." Id. at 33.
¶ 42. Likewise, in Lynce v. Mathis, 519 U.S. 433, 446-47 (1997), the Supreme Court concluded that it was an ex post facto violation to cancel good-time credits that had been awarded pursuant to statutes enacted after the date the defendant committed his offense. In Lynce, a retroactive statute took away good-time credits that existed at the time of conviction and sentencing, but did not exist at the time the defendant committed the offense. Id. at 447. The Lynce court remanded the case for a determination of the number of good-time credits that the defendant accumulated under the statutes that existed at the time of his conviction and sentencing, concluding that they could not be cancelled by the retroactive law. Id. at 449.
¶ 43. Lynce acknowledged that "[t]he bulk of our ex post facto jurisprudence" involves claims that a law inflicted a greater punishment than at the time the offense was committed." Id. at 441. However, it explained that an ex post facto law must simply be retrospective in that it "must apply to events occurring before its enactment." Id.
¶ 44. Applying the ex post facto protection to conviction and sentencing is consistent with the principle that "the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects." Id. at 440. This basic principle protects a "defendant engaged in negotiations that may lead to an acknowledgment of guilt and a suitable punishment." Id.
*147 ¶ 45. Similarly, in State ex rel. Eder v. Matthews, 115 Wis. 2d 129, 340 N.W.2d 66 (Ct. App. 1983), the Wisconsin court of appeals addressed the issue of whether application of a "good time" calculation violated the ex post facto clauses. The Matthews court explained that the application of the "good time" formula would increase the period of the defendant's confinement. Id. at 133. Matthews concluded that "[a] law which increases or alters the punishment of an offender to his detriment, after he has been convicted and sentenced, constitutes an ex post facto law . . . ." Id. (emphasis added).
¶ 46. If this court adopted the position advanced by Kemper that a law can retroactively increase the length of time an inmate is incarcerated after sentencing, we would have to overrule Matthews. We decline to do so because it is consistent with United States Supreme Court precedent.
¶ 47. The early release provisions of 2009 Wis. Act 28 were in effect when Singh was convicted and sentenced for the first offence, as well as at the time he committed the second offence. Just as in ^Weaver and Matthews, the repeal of early release would impermis-sibly retroactively increase Singh's punishment after he was convicted and sentenced. Under both Wisconsin and Supreme Court precedent, the repeal of early release after the commission of an offense violates the ex post facto clauses.
¶ 48. Accordingly, we agree with the court of appeals that retroactive repeal of positive adjustment time in 2011 Wis. Act 38 violates the ex post facto clauses of the Wisconsin and United States Constitutions.
*148 > 1 — I
¶ 49. We address next the issue raised in Singh's petition for review. He contends that the newly created Wis. Stat. § 973.198 violates the ex post facto clauses because it extends the amount of time an inmate is incarcerated by up to 90 days after he is eligible for early release.[9]
¶ 50. Under 2009 Wis. Act 28, the DOC was required to notify the sentencing court 90 days before an inmate was eligible for release that it intended to modify the inmate's sentence and release the inmate to extended supervision. Wis. Stat. § 302.113(2)(c)l. (2009-10). The sentencing court had the discretion to hold a hearing within 30 days after it received notice from the DOC. Id.
¶ 51. If the sentencing court opted to conduct a review hearing, it was required to hold the hearing and issue an order relating to the inmate's early release within 60 days of receiving the DOC's notice. Wis. Stat. § 302.113(c)(2)a. (2009-10). When the court did not schedule a review hearing within 30 days after notification from the DOC, the inmate would be released on the first day he was eligible. § 302.113(2)(b) & (c)1. (2009-10).
¶ 52. Although 2011 Wis. Act 38 eliminated positive adjustment time after August 3, 2011, by enacting Wis. Stat. § 973.198, it allowed those inmates who *149 earned positive adjustment time while 2009 Wis. Act 28 was in effect to petition for early release. Rather than retain the procedures set forth in Wis. Stat. § 302.113 (2009-10), the Legislature enacted § 973.198, which now governs the process for early release for inmates who earned positive adjustment time under 2009 Wis. Act 28.
¶ 53. Pursuant to Wis. Stat. § 973.198(1), an inmate who earned positive adjustment time under Wis. Stat. § 302.113 (2009-10) may petition for early release after he has served the confinement portion of his sentence minus any positive adjustment time earned. Within 60 days of receiving the inmate's petition, the sentencing court "shall either deny the petition or hold a hearing and issue an order relating to the inmate's sentence adjustment and release to extended supervision." § 973.198(3). If the court determines that an inmate has earned positive adjustment time, it "may reduce the term of confinement in prison by the amount of time remaining in the term of confinement in prison portion of sentence, less up to 30 days. . . ." § 973.198(1).
¶ 54. Singh argues that Wis. Stat. § 973.198 violates the ex post facto clauses because it delays the release of inmates who have earned positive adjustment time. Under 2009 Wis. Act 28, the process for obtaining early release began 90 days before inmates were eligible to be released. Then, the procedures for processing an inmate's release were completed within 90 days and the inmate was released on his eligibility date.
¶ 55. In contrast, under Wis. Stat. § 973.198, an inmate cannot file a petition for early release based on positive adjustment time until the date on which he is first eligible for release. The filing of the petition *150 begins a process for determining eligibility for release that can take up to 90 days. For inmates who have earned positive adjustment time, § 973.198 adds up to 90 days of incarceration to a sentence in comparison to early release under Wis. Stat. § 302.113 (2009-10).
¶ 56. Kemper counters that the change in the law introduced by Wis. Stat. § 973.198 was merely procedural. Although a procedural change may have a substantive impact that violates the ex post facto clauses, Kemper asserts that the speculative and attenuated possibility of an increase in an inmate's actual term of confinement is not an ex post facto law. See, e.g., Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995). Relying on Dobbert v. Florida, 432 U.S. 282, 293-94 (1977), he argues that § 973.198 may have altered the methods employed in determining the punishment imposed, but did not change the quantum of punishment attached to the crime.
¶ 57. According to Kemper, Wis. Stat. § 973.198 does not violate the ex post facto clauses because the sentencing court retained discretion to grant or deny an inmate's request for positive adjustment time under both laws. Thus he asserts that any claim of increased confinement pursuant to § 973.198 would be too speculative and attenuated to constitute an ex post facto violation. We disagree with Kemper because the unavoidable delay in an inmate's release under Wis. Stat. § 973.198 is neither speculative nor attenuated.
¶ 58. Kemper's reliance on Dobbert is misplaced. In Dobbert, the defendant argues that a change in the role of the judge and jury in the imposition of the death sentence constituted an ex post facto violation. 432 U.S. at 292. The Dobbert court determined that the law at issue in that case was clearly procedural because "there was no change in the quantum of punishment *151 attached to the crime." Id. at 293-94. Unlike in Dob-bert, Wis. Stat. § 973.198 may increase an inmate's incarceration by up to 90 days.
¶ 59. In Morales, the United States Supreme Court addressed the issue of when a claim of increased confinement is too speculative and attenuated to constitute an ex post facto violation. 514 U.S. 499. Morales involved a change to the frequency of parole suitability hearings that is distinguishable from the facts of this case as well as Weaver, 450 U.S. 24, Lindsey v. Washington, 301 U.S. 397 (1937), and Miller v. Florida, 482 U.S. 423 (1987). See Morales, 514 U.S. at 507-08.
¶ 60. The amendment at issue in Morales made only one change to the law. 541 U.S. at 507. It introduced the possibility that after the initial parole hearing, the board would not have to hold another hearing for two years if it found no reasonable probability that the inmate would be deemed suitable for parole during that period. Id. Rather than changing the sentencing range for an offense, the amendment altered the method to be followed in fixing a parole release date under identical substantive standards. Id. at 507-08.
¶ 61. Morales explained that many legislative adjustments to parole and sentencing procedures might produce "some remote risk of impact on a prisoner's expected term of confinement." Id. at 508. As examples, Morales identified certain "innocuous adjustments" such as changes to the membership of the board of prison terms or restrictions on hours that inmates may use the prison library. Id.
¶ 62. The changes to early release under Wis. Stat. § 973.198 are not innocuous adjustments. An inmate who would have been released on his eligibility date under the now repealed Wis. Stat. § 302.113 (2009-10), cannot file a petition for release until he *152 reaches that same date. Then, the procedure for obtaining release will take up to 90 days after the petition is filed. Thus, § 973.198 increases the length of incarceration for every inmate who is eligible for early release based on positive adjustment. This arbitrary increase in punishment violates the ex post facto clauses of the Wisconsin and United States constitutions.
¶ 63. We agree with Singh that this court's decision in State ex rel. Mueller v. Powers, 64 Wis. 2d 643, 221 N.W.2d 692 (1974), is analogous. In Mueller, inmates in the state prison system sought a declaration that a change in the law that extended their initial eligibility date for parole from two years to five years into their imprisonment violated the ex post facto clauses of the Wisconsin and United States Constitutions. Id. at 645.
¶ 64. This court determined that the statute at issue in Mueller was unconstitutional because the new law increased "the time that must be served by petitioners before they are eligible for parole consideration from two to five years in a very real and practical sense imposes an additional penalty and violates the constitutional inhibition against ex post facto legislation." Id. at 647. Likewise, Wis. Stat. § 973.198 imposes additional punishment because it increases the time served by inmates before they are eligible for early release.
¶ 65. This opinion should not be read to revive the alternative definition of an ex post facto violation stated in Mueller as any law "which alters the situation of the accused to his disadvantage." Id. at 646 (citation omitted). In Thiel, 188 Wis. 2d at 703, this court withdrew this language from Mueller, explaining that an ex post facto violation must increase the *153 punishment for an offense, not simply alter the situation of a defendant to his disadvantage.
¶ 66. Although important to note, this discrete narrowing of Mueller does not affect the issues in this case. Mueller's conclusion that changing parole eligibility from two years to five years is an ex post facto violation is also based on the proper legal standard that it "imposes an additional penalty." 64 Wis. 2d at 647. Likewise, Singh argues that the up to 90 day delay in release under Wis. Stat. § 973.198 imposes an additional penalty that was not imposed under the prior law.
¶ 67. A similar conclusion reached by the United States Supreme Court further supports this court's determination. In Weaver, 450 U.S. at 26, the court determined that a change in Florida's "gain time for good conduct" statute extended the time that inmates were required to spend in prison. Similar to the statutory change at issue in this case, the Florida law "reduce [d] the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks." Id. at 33. The Weaver court explained that "this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison." Id.
¶ 68. Under both Wisconsin and United States Supreme Court precedent, a retroactive change in the law that increases the length of an inmate's sentence violates the ex post facto clauses. We agree with Singh that under Wis. Stat. § 973.198, inmates who are eligible for positive adjustment time are released up to 90 days later than under 2009 Wis. Act 28. Thus, we conclude that § 973.198 violates the constitutional *154 prohibition against ex post facto laws and that the circuit court erred when it dismissed the writ of habeas corpus.
V
¶ 69. I would remand to the circuit court to address whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted. Although Singh has been released from prison, he remains on extended supervision which is considered "custody" for the purposes of a writ of habeas corpus.
¶ 70. United States Supreme Court precedent leaves "no doubt" that in addition to physical imprisonment, there are other restraints on liberty that are considered "custody for habeas corpus purposes— including post-release supervision:
History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.
Jones v. Cunningham, 371 U.S. 236, 240 (1963); see also Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006) ("[p]ost-release supervision, admitting the possibility of revocation and additional jail time, is considered to be 'custody'" for the purposes of habeas corpus.).
¶ 71. Following the clear directive in Jones, the Wisconsin court of appeals explained that it is "settled" that habeas corpus does not require actual physical imprisonment. State ex rel. Wohlfahrt v. Bo *155 dette, 95 Wis. 2d 130, 133-34, 289 N.W.2d 366 (1980). Rather, the focus is on whether one is subject to restraints not shared by the public generally:
Reviewing federal law, we find that federal habeas corpus is available to one "in custody." It is settled that the use of habeas corpus has not been limited to situations where the applicant is in actual physical custody, but is available to one subject to restraints not shared by the public generally. It has been held that the language "in custody" is synonymous with "restraint of liberty."

Id.

¶ 72. At oral argument, Singh's counsel suggested that changing the conditions of extended supervision or reducing the term of extended supervision may be appropriate remedies in this case. As the United States Supreme Court explained in Carafas v. Lavallee, 391 U.S. 234, 239 (1968), "the [federal habeas corpus] statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that '[t]he court shall. . . dispose of the matter as law and justice require.' "
¶ 73. Although the law may be well settled on this issue, the facts of this case certainly are not. The facts of this case have been a moving target, in part due to the disposition of at least one of the number of post-conviction motions that Singh has filed. At oral argument, this court learned for the first time that Singh's sentence for the 2008 offense was modified to one year in jail, but we do not know the grounds for this modification. Apparently, Singh also received credit for time served and had the extended supervi *156 sion portion of the sentence vacated. See Justice Ziegler's concurrence/dissent, ¶ 149.
¶ 74. As one of the dissents acknowledges, there are questions of fact in this case relevant to the issue of whether Singh is entitled to positive adjustment time that cannot be answered by reference to the eviden-tiary record before this court. See generally Chief Justice Roggensack's dissent, ¶ 218-21. For instance, the dissent states that there was an opportunity for Singh to earn positive adjustment time on the July 2011 offense which had the potential to be an ex post facto violation, but "from the record before us, it is not possible to make that factual determination . ..." Id. ¶ 218. See also id. ¶ 219 ("The potential for an ex post facto violation on the second crime due to repeal of PAT is not possible to determine due to the following circumstances presented by this case . . . "); id., ¶ 200 ("His first day of confinement for the July 25, 2011 crime is uncertain due to the modification of the Waukesha County Judgment"); id., ¶ 221 ("It may be that Singh can prove, as a factual matter, that he was confined on the second sentence longer than should have occurred and that some type of relief may be accorded . . . )"; Justice Ziegler's concurrence/dissent, ¶ 148 n. 10 ("It is unclear from the record exactly what date this petition was filed . . .").
¶ 75. Because this court is not a fact-finding court, the circuit court is better suited to make a determination regarding whether Singh is entitled to relief.[10] See, e.g., Mitchell Bank v. Schanke, 2004 WI *157 14, | 84, 268 Wis. 2d 571, 676 N.W.2d 849 (remanding to the circuit court for specific findings because "this court is not a fact-finding body. The circuit court is better suited to make these precise determinations."). Accordingly, I would remand to the circuit for a determination of whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted.
r-H >
¶ 76. In sum, we conclude that because the early release provisions of 2009 Wis. Act 28 were in effect when Singh was convicted and sentenced for the first offense, as well as at the time he committed the second offense, retroactive repeal of positive adjustment time in 2011 Wis. Act 38 violates the ex post facto clauses of the Wisconsin and United States Constitutions. We also conclude that Wis. Stat. § 973.198 violates the constitutional prohibition against ex post facto laws because it makes the punishment for an offense more burdensome after it was committed.
¶ 77. Accordingly, we affirm the court of appeals' determination that the retroactive repeal of positive adjustment time is an ex post facto violation, but reverse its determination that Wis. Stat. § 973.198 does not violate the constitutional prohibition against ex post facto laws. Additionally, I would remand the cause to the circuit court for a determination of whether under the current circumstances it is now appropriate to grant the writ and what additional relief, if any, is warranted.
*158 By the Court. — The decision of the court of appeals is affirmed in part and reversed in part.

 The mandate is to affirm in part and reverse in part the opinion of the court of appeals. Five justices are in accord with this mandate (Abrahamson, J., Ann Walsh Bradley, J., Prosser, J., Ziegler, J., and Gableman, J.). Accord on the individual issues, however, is mixed.
A majority of the court concludes that Wis. Stat. § 973.198 violates the constitutional prohibition against ex post facto laws because it makes the punishment for an offense more burdensome after it was committed. Five justices reverse the court of appeals determination on this issue (Abrahamson, J., Ann Walsh Bradley, J., Prosser, J., Ziegler, J., and Gableman, J.).
Likewise a majority of the court concludes that the retroactive repeal of positive adjustment time violates the ex post facto clause vis-a-vis the July 2011 offense. Five justices would affirm the court of appeals determination of that issue (Abrahamson, J., Ann Walsh Bradley, J., Prosser, J., Ziegler, J., and Gableman, J.).
However, no majority has been garnered as to whether the retroactive repeal violates the ex post facto clause vis-á — vis the 2008 offense. Three justices conclude that it does (Abrahamson, J., Ann Walsh Bradley, J., and Prosser, J.); two justices conclude that it does not (Roggensack, C.J. and Rebecca G. Bradley, J.); and two justices do not address the issue (Ziegler, J., and Gableman, J.).
Finally, there are two justices who would vote to remand this case to the circuit court for a determination of whether *132 Singh is entitled to relief (Abrahamson, J., Ann Walsh Bradley, J.). However, a majority of the court would not remand (Roggensack, C.J., Prosser, J., Ziegler, J., Gableman, J. and Rebecca G. Bradley, J.).

 State ex rel. Singh v. Kemper, 2014 WI App 43, 353 Wis. 2d 520, 846 N.W.2d 820 (affirming in part and reversing in part an order quashing writ of habeas corpus and dismissing petition entered by the circuit court for Racine County, Gerald P. Ptacek, J., presiding).

 The prohibition on ex post facto laws in the Wisconsin Constitution is found in Article 1, Section 12, which provides: "No ... ex post facto law . . . shall ever be passed .. . ."
The prohibition on ex post facto laws in the United States Constitution is found in Article I, Sections 9 and 10. Section 9 provides: "No bill of Attainder or ex post facto Law shall be passed." Section 10 provides: "No state shall. . . pass any . . . ex post facto Law. ..."

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 Some inmates not eligible for positive adjustment time under Wis. Stat. § 302.113(2)(b) (2009-10) were instead eligible pursuant to Wis. Stat. § 304.06(1)(bg)1. (2009-10). Under the latter statute, inmates earned one day of positive adjustment time for every three days served. Wisconsin Stat. § 304.06(1)(bg)1. (2009-10) provided:
A person sentenced under s. 973.01 for a Class F to Class I felony or a misdemeanor that is not a violent offense, as defined in s. 301.048(2)(bm)l., and who is ineligible for positive adjustment time under s. 302.113(2)(b) pursuant to s. 973.01(3d)(b) or for a Class F to Class I felony that is a violent offense, as defined in s. 301.048(2)(bm)l., may earn one day of positive adjustment time for every 3 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties. The person may petition the earned release review commission for release to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence, as modified by the sentencing court under s. 302.045(3m)(b)l. or 302.05(3)(c)2.a., less positive adjustment time he or she has earned.

 Wisconsin Stat. § 961.43(1)(a) provides: "It is unlawful for any person: To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." Any person who violates this section is guilty of a class H felony. Wis. Stat. § 961.43(2).

 At oral argument this court was advised that on July 14, 2015, Singh's judgment of conviction for the 2008 Waukesha County offense was amended from prison time to one year served in the county jail. Such an amendment may give rise to an issue of whether Singh would be entitled to positive adjustment time for time served in the county jail. It also raises the question of whether Singh's claim is moot if he was eligible for positive adjustment time only for the time served in prison, rather than the county jail. See ¶ 24 n.8, infra. Because we first learned of this at oral argument and those *139 issues were neither briefed nor argued before this court, I do not now address them. I would remand to the circuit court for a determination of this issue.

 Singh also petitioned for review on an issue that we did not accept involving the open records law.
After this court accepted the petition and cross-petition for review, Singh informed the court that he had been released to extended supervision and was no longer incarcerated. This court ordered the parties to file briefs on the issue of mootness due to Singh's release from custody.
Singh argues that the issue of whether Wis. Stat. § 973.198 is an ex post facto law is not moot because he *140 remains on extended supervision and subject to incarceration until 2018. He further asserts that even if his case is moot, this court should address this issue.
The State argues that both the issue Singh raises in his petition and the issue the State raises in its cross-petition are moot. Nevertheless, the State argues that this court should consider the issue raised in its cross-petition because other inmates who were eligible for positive adjustment time are likely to raise the issue of whether the retroactive repeal of early release is an ex post facto violation.
Even if they are moot, we address both the issue raised in Singh's petition and the issue raised in the State's cross-petition. Both issues are of public importance, are likely to affect other inmates, and involve the constitutionality of a statute. State ex rel. La Crosse Tribune v. Cir. Ct. for La Crosse Cty., 115 Wis. 2d 220, 229, 340 N.W.2d 460 (1983).

 At the court of appeals, Singh challenged the role of the sentencing court under Wis. Stat. § 973.198. Singh raised this issue in his petition for review. We need not address that issue because we conclude that Wis. Stat. § 973.198 is an ex post facto law due to the fact that it adds up to a 90 day delay in release compared to the prior law.

 Justice Ziegler's concurrence/dissent reaches out for facts that are not in the record and were not briefed or argued by either party. For example, the concurrence/dissent conducted a DOC Offender Locator internet search to try to determine Singh's maximum discharge date. Justice Ziegler's *157 concurrence/dissent, 1 149 & n.12. It seems to want to gather facts not of record and based upon these uncertain facts to deny Singh any relief.